311 So.2d 624 (1975)
Joe Howard LAWSON, Plaintiff and Appellant,
v.
Jackie Marie LAWSON, Defendant and Appellee.
No. 4962.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1975.
*625 Wilbert E. McReynolds, DeRidder, for plaintiff and appellant.
Ashton J. Landry and Richard S. Hoover, Lafayette, for defendant and appellee.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
Plaintiff and defendant were divorced by judgment dated June 30, 1972. Joe Howard Lawson was awarded custody of their children, Judy Collette Lawson and Joe Howard Lawson, II, ages 14 and 11 respectively. Jackie Marie Lawson was granted visitation rights as follows:
"(a) Defendant shall have the right to visit on every third (3rd) weekend, beginning in July of 1972, provided she pick said children up at 5:00 P.M. on Friday and return them to the home of the plaintiff, Mr. Joe Howard Lawson in Beauregard Parish, Louisiana, on the following Sunday afternoon on or before 5:00 P.M.
"(b) Defendant shall have the right to have said children see and visit with her for a period of four (4) weeks each summer, beginning with the summer of 1972, and she shall be authorized and she is authorized to pick said children up during the last week of July and keep them for a period of four (4) successive weeks in the year 1972. This right of summer visitation shall continue annually thereafter, except that in the year 1973 and all successive years, the summer visitation shall be for a period of six (6) weeks (in lieu of four weeks).
"(c) Defendant shall have the right to see and visit said children and to have said children see and visit with her on alternate Christmas and Thanksgiving holidays, beginning with Christmas of the year 1972.
"(d) Defendant shall have the right to see and visit said children in Beauregard Parish, Louisiana, on their birthdays, when these birthday dates do not fall on the above custody periods heretofore granted to her.
"IT IS ORDERED, ADJUDGED AND DECREED that during all periods of visitation, in which the children shall see and visit with their mother in Port Arthur or Groves, Texas, that the said children are not to be kept or allowed to sleep in the nighttime, at any place other than the residence of the defendant, Mrs. Jackie Marie Lawson, in Port Arthur or Groves, Texas; and that in the event, and at such times that it would be necessary *626 for the mother, Mrs. Jackie Marie Lawson, to be away or apart from said children, that she will made adequate provisions for a babysitter to maintain and keep the said children in the family home."
Plaintiff appeals the dismissal of his rule to terminate the visitation privileges of his former wife.
The sole issue is whether the visitation rights of the defendant should be terminated completely or, alternatively, severely limited.
The father was awarded custody of the children due to the unfitness of the mother. In his written reasons, the trial judge found that the mother had extra-marital relations with at least two men, Bill Hardeman and Matt Klisch.
The defendant admits giving birth to a baby girl from her illicit relationship with Klisch. She also admits having lived with Harry Dore as early as August, 1969. Although she admits having three other male acquaintances at various times, she denies having lived with any of them. Since her divorce, the defendant testified that she has seen Bill Hardeman, the last time being about April, 1973. She claims that he came to her house in Groves, Texas and took the children fishing and swimming while she was at work.
Plaintiff testified that he had seen Hardeman at his wife's home and suspects that she continued to live with him after their divorce.
She began living with Willie A. Cessac in her home in Groves, Texas on December 29, 1973. She claims that they are husband and wife by virtue of Texas law permitting common law marriages. The parties have not submitted to a marriage ceremony. Her claim is based upon the fact that they have cohabitated together in her home holding themselves out as man and wife.
Willie has been married three previous times. He was jailed on one occasion about two years ago for criminal nonsupport of one of his prior families. He works as a truck driver and heavy equipment operator for a company in Beaumont, Texas.
On several occasions, Willie and the defendant have returned the children in his automobile to the plaintiff's home in De-Ridder, a trip of 100 miles. Furthermore, on two occasions Willie has returned the children by himself while the defendant was working. The last time Willie returned the children, his car broke down near Starks, Louisiana. When Collette called her father to come get her and her brother, the plaintiff learned that his wife was now living with Willie A. Cessac. Believing his wife had begun another in a series of illicit relationships, plaintiff instituted this rule.
Jackie Marie Lawson works for a convenience grocery store in Groves, Texas. Her hours are 1:30 p.m. to 9:30 p.m., seven days a week, except two nights when she works until 10:00 p.m. She has another job three days a week from 7:30 a.m. to 1:20 p.m.
While she works, her three year old daughter is cared for in the home of her babysitter, Mrs. Marino B. Patton. The two older children have no regular babysitter and usually remain at their mother's home alone while she works. The mother testified that these children are checked on about five times daily by next-door neighbors, Willie A. Cessac, and her babysitter. She claims that the children also call her about two or three times a day at her job.
Collette Lawson testified that she and her brother stayed with Mrs. Patton when her mother worked at night. She also said that they stayed at home alone a few times. The record also reflects that the children were left alone with Willie on occasion.
Collette has seen her mother and Willie fighting each other. She also learned that Willie had bruised her mother's mouth and blackened her eye in another fight.
*627 Collette also testified that Willie slapped her face and leg. This punishment was inflicted after Willie and the defendant returned home and learned that Collette had allowed her three year old half-sister to climb up and get some lotion from a shelf. Willie also whipped Joey with a belt across his legs because he left water standing in the tub. Collette says that she thought Willie had been drinking before his return on this occasion.
The defendant admits that she told the children their father was awarded custody only because he "bought her lawyer and the judge." The plaintiff says that his former wife has taught his children to hate him and to disregard his authority as the custodial parent. He says that each time the children visit their mother it takes a couple of weeks for them to return to normal.
The defendant is estranged from all of her former husband's family, as well as her own family, with the exception of one brother. Although the defendant's father lives across the street from her in Groves, the children are not permitted to visit him. Nor are they permitted to visit with their cousins who are about the same age and live in the Groves area.
By contrast, the plaintiff enjoys amicable relations with his family and his former wife's family. The children are allowed to visit and spend the night with their paternal grandparents who live only a short distance from the father's home. They also attend church regularly with their father and his parents. Their father's disability retirement from the Armed Forces adequately provides for him and both children. He stays at home most of the time. Collette testified that his disability sometimes forces him to stay in the hospital. While their father is hospitalized, the children stay with their grandparents.
The husband contends that the mother's visitation rights should be terminated completely or severely limited because: (1) She has continued her immorality and promiscuity after her divorce, and further contact with her by the children will be detrimental to their moral and emotional wellbeing. (2) She has abused her right by failing to abide by the conditions placed on her by the divorce judgment relating to the babysitter. (3) The mother's visitation rights of approximately 80 days per year amount to a division of custody and authority, thus having a harmful effect upon the children each time they return to their father's home.
The rules regarding visitation of the noncustodial parent are well established and have been clearly enunciated by the court in Ogden v. Ogden, 220 So.2d 241 (La.App.1st Cir. 1969):
"It is settled law that in the event of divorce or separation of parents with the consequent awarding of custody of children of the marriage to one parent, the other parent has the right of access to the children. This privilege of access is subject to such reasonable restrictions as the circumstances warrant within the discretion of the court. Said privilege may not be denied unless the parent has forfeited same by his conduct or the exercise thereof be injurious to the children's welfare. Johnson v. Johnson, 214 La. 912, 39 So.2d 340.
" Equally well established is the rule that in cases of this nature the paramount issue is the welfare of the children concerned, which consideration dictates that the control of the spouse granted custody be an undivided authority. Consequently visitation privileges accorded the spouse not having custody should never be so extensive or liberal as to constitute a divided authority or shared control of the children concerned."
Plaintiff relies heavily upon the case of Franz v. Franz, 230 So.2d 450 (La.App. 4th Cir. 1970) as authority for the complete termination of his former wife's visitation *628 privileges. The court there terminated the mother's visitation rights as injurious to the children's well-being because she was an alcoholic and cursed and abused the children when they were with her.
The plaintiff attempts to analogize the Franz case to the present one. He claims that during a period of several years his wife has lived with five different men to whom she was not married. He points to the fallacy of defendant's contention that she has reformed and intends to live only with Willie A. Cessac and give him that fidelity owed between spouses. The plaintiff complains that the defendant's relationship with Willie is another in a long series of illicit unions. His counsel argues that the defendant's conduct will continue to be detrimental to the children's welfare in the future. For these reasons, it is urged that her visitation rights be completely terminated.
Although it is established that the desires of the children should not be controlling in determining to whom visitation rights should be awarded, their desires, however, are factors which may and should be considered, along with all of the other circumstances in making a determination as to visitation rights, Franz v. Franz, supra. See also Hebert v. Hebert, 255 So.2d 630 (La.App.3rd Cir. 1971).
Both children testified that they wish to continue visiting with their mother. Nevertheless, they indicated a strong dislike for Willie A. Cessac and did not wish to visit their mother when he was present.
The mother has been granted the right to have the children visit in her home for approximately 80 days of each year. The children must make a 200 mile round trip from DeRidder to Groves every third weekend. They also spend one-half the summer vacation in their mother's home. In addition, the mother has visitation rights on alternative Thanksgiving and Christmas holidays.
There is an obvious disparity between the home environments provided by the father and by the mother. The mother lives with a man who not only fights with her but also beats her such that her bruised mouth and blackened eye have been visible to her 14 year old daughter. Willie A. Cessac and the defendant both use vile and abusive language in the presence of the children. The punishment inflicted by Willie upon the children is harsh for the conduct he seeks to correct. In summary, the mother's home environment is one of fear and hostility.
On the contrary, an atmosphere of peace and trust prevails in the father's home. There are no beatings, no vile and abusive language, and no harsh punishment. The children are well cared for. They attend church regularly with their father. Their performance in school is above average.
These children have also been continuously subjected to the amoral lifestyle of their mother. She has admitted living with three men while she was still married to the plaintiff. An illegitimate child resulted from one of these relationships.
Since the divorce, the defendant claims that she has lived only with her common law husband, Willie A. Cessac. However, she admits that she and Willie have separated several different times. Joey Lawson also testified that Keith was the first man his mother lived with in Groves and that there have been others besides Willie. The defendant's union with Willie A. Cessac is probably only another in a series of promiscuous relationships.
Each time the children visit their mother in Texas she attempts to set them against their father. She has no respect for the authority of the custodial parent which extends throughout each visitation period. Her attitude toward the children's father has caused them to resist his authority *629 which in turn has produced insecurity and turmoil in their lives.
The mother has continually flouted the conditions of visitation established by the trial judge. She has provided no babysitter since the summer of 1974. Usually, the children are left alone at home to do as they please without any adult supervision.
We can agree with the trial judge in refusing to completely terminate the defendant's visitation rights. However, we conclude that the circumstances in the present case warrant more stringent restrictions on the defendant's access to the children.
Accordingly, the October 30, 1974 judgment on the rule will be amended to establish the following visitation privileges:
It is ordered, adjudged and decreed that the defendant, Jackie Marie Lawson, shall have the right to see and visit the children, Judy Collette Lawson and Joe Howard Lawson, II every third Saturday, beginning the month after this judgment becomes final, provided she pick the children up at 9:00 a.m. on Saturday and return them to the home of Joe Howard Lawson in Beauregard Parish, Louisiana by 7:00 p.m. on the same day.
It is further ordered, adjudged and decreed that the defendant shall not be permitted to visit with the children anywhere except in Beauregard Parish.
It is further ordered, adjudged and decreed that the defendant shall have the right to see and visit the children in Beauregard Parish on their birthdays when the birthdates do not fall within the above custody periods heretofore granted to her.
The costs in the trial court and in the Court of Appeal will be assessed one-half to the plaintiff and one-half to the defendant.
Affirmed as amended.