434 So.2d 375 (1983)
Glenn E. MAXWELL
v.
Darleen LEBLANC.
No. 82-C-1801.
Supreme Court of Louisiana.
April 4, 1983.
*376 Leonard K. Fisher, Jr., Boutte, for applicant.
Darlene LeBlanc Wester, Steven Griffith, Sr., Destrehan, for respondents.
DENNIS, Justice.
This case concerns the visitation rights of the father of an acknowledged natural child, the burden of proof in actions for visitation rights, and the allocation of that burden upon the respective parties. The father appealed a district court judgment in favor of the mother dismissing his demand for visitation rights with his natural child. The court of appeal affirmed. We reverse and remand the case to the trial court for further action consistent with the views expressed in this opinion.
Glenn E. Maxwell and Darleen LeBlanc lived together for several years. A child, Michelle Marie Maxwell, was born during their cohabitation in November of 1977. In July of 1979, Maxwell and LeBlanc stopped living together. Maxwell left the child under the care of LeBlanc. He paid LeBlanc child support of $25 per week and visited with Michelle two to three times per week. In early 1980, when LeBlanc became involved with another man, who eventually became her husband, she refused further support checks and prevented Maxwell from visiting with Michelle.
Maxwell filed suit on March 19, 1980 asking that the court set visitation rights. LeBlanc answered, praying for rejection of visitation and, in the alternative, asked the court to set support payments at $300 per month. The trial judge dismissed the suit, finding that the plaintiff's demand for visitation was not in the best interest of the child. Since defendant prevailed on the main demand, the trial court did not rule on her alternative request for fixed support payments. The plaintiff appealed, and the court of appeal, in an unpublished opinion, affirmed, finding that the decision of the trial judge was within the wide latitude of discretion that was uniquely his province in child welfare cases.
The right of visitation for a non-custodial parent is a natural right with respect to his children, and this right is enforceable in a civil action when the custodial parent denies visitation access.[1]Roshto v. Roshto, 214 La. 922, 39 So.2d 344 (1949); Johnson v. Johnson, 214 La. 912, 39 So.2d 340 (1949); Pierce v. Pierce, 213 La. 475, 35 So.2d 22 (1948); Jacquet v. Disimone, 175 La. 617, 143 So. 710 (1932). See H. Clark, Jr., The Law of Domestic Relations § 17.4(g) (1968). French Civil Code article 288 specifically provides the non-custodial parent with the rights of visitation and hebergement, which *377 is defined by French jurisprudence to include such rights as (1) the right of correspondence, (2) the right of both parents to enjoy the presence and the love of their children, even though both may not have the right to continuing custody, and (3) the right to enjoy the presence of one's children during special occasions such as holidays or during the annual vacation. Blakesley, Child Custody and Parental Authority in France, Louisiana and Other States of the United States: A Comparative Analysis, 4 B.C. Inter'l and Comp.Law Rev. 283, 312 (1981). We have recognized similar rights in Louisiana as a species of custody under Civil Code articles 146 and 157, and the latest revision of these articles, while not specifically providing for rights of visitation, strongly suggest that visitation should be considered in any plan for custody. See La.Civ.Code art. 146(A)(1)(b) and (2), and art. 157, as amended by 1982 La. Acts, No. 307, § 1.
In restating the heavy burden of proof which is required before a parent can be deprived of the custody of his child, we observed in Deville v. LaGrange, 388 So.2d 696 (La.1980) that:
There is no reason to restrict the applicability of these principles to parent-child relationships which the law defines as legitimate. No one would argue that the weight of a mother's right to the custody of her child should be reduced simply because she is not married to the child's father and has not performed a formal act of legitimation. There may be a misguided tendency to view the situation in a different light when the parent whose right is at stake is the father, but this is so only because of a failure to distinguish between the right which flows from the fact of parenthood, whether that parenthood is legitimate or not, and the possibility of a subsequent forfeiture of parenthood through abandonment or negligent, which may be greater when the relationship between the child's father and its mother, or between the father and the child, has not been formalized. Parenthood itself confers a right of custody. . . .
388 So.2d at 698. Visitation is a species of custody. Downey v. Downey, 183 La. 424, 164 So. 160 (1935); Lewis v. Lewis, 148 So.2d 420 (La.App. 1st Cir.1962), writ denied 150 So.2d 588 (La.1963). See Davis v. Davis, 212 Ga. 217, 91 S.E.2d 487 (1956); Note, A Father's Right to Visit His Illegitimate Child, 27 Ohio St.L.J. 738, 743 n. 46 (1966). Thus, rights to visitation also belong to all parents regardless of illegitimacy of parenthood. Firmin v. Miller, 355 So.2d 977 (La.App. 3rd Cir.1977); Taylor v. Taylor, 295 So.2d 494 (La.App. 3rd Cir.), writ denied, 299 So.2d 799 (La.1974). See Gay v. Cairns, 298 N.W.2d 313 (Iowa 1980); Pearson v. Clark, 382 So.2d 482 (Miss.1980); J.M.S. v. H.A., 242 S.E.2d 696 (W.Va.1978); State ex rel. Wingard v. Sill, 223 Kan. 661, 576 P.2d 620 (Kan.1978); Sullivan v. Bonafonte, 172 Conn. 612, 376 A.2d 69 (1977); Gardner v. Rothman, 370 Mass. 79, 345 N.E.2d 370 (1976); Willmott v. Decker, 56 Haw. 462, 541 P.2d 13 (1975); Turner v. Saka, 90 Nev. 54, 518 P.2d 608 (1974); Slawek v. Stroh, 62 Wis.2d 295, 215 N.W.2d 9 (1974); In re One Minor Child, 295 A.2d 727 (Del.1972); Commonwealth v. Rozanski, 206 Pa.Super. 397, 213 A.2d 155 (1965); Bagwell v. Powell, 267 Ala. 19, 99 So.2d 195 (1957); Ex Parte Hendrix, 186 Okl. 712, 100 P.2d 444 (1940); Phillips v. Horlander, 535 S.W.2d 72 (Ky.App.1975); In re Guardianship of Harp, 6 Wash.App. 701, 495 P.2d 1959, app. denied, 80 Wash.2d 1010 (1972); Mixon v. Mize, 198 So.2d 373 (Fla.App.) cert. denied, 204 So.2d 211 (Fla.1967); People ex rel. Francois v. Ivanova, 14 App. Div.2d 317, 221 N.Y.S.2d 75 (1961); Strong v. Owens, 91 Cal.App.2d 336, 205 P.2d 48 (1949); Baker v. Baker, 81 N.J.Eq. 135, 85 Atl. 816 (1913).
The right of visitation is not without its limitations. The rights of any parent are always subservient to the best interests of the child. Larroquette v. Larroquette, 293 So.2d 628 (La.App. 4th Cir.1974). The visitation rights of a person whose child is illegitimate is no different. See Gay v. Cairns, supra; Pearson v. Clark; supra; J.M.S. v. H.A., supra, State ex rel. Wingard *378 v. Sill, supra. Sullivan v. Bonafonte, 172 Conn. 612, 376 A.2d 69 (1977); Gardner v. Rothman, supra; Commonwealth v. Rozanski, supra. Cf. Deville v. LaGrange, supra. It is the burden of the parent seeking to deny access or visitation, however, to prove that the visitation would not be in the best interest of the child. Phillips v. Horlander, supra. See Baker v. Baker, supra; Strong v. Owen, supra; and Ex Parte Hendrix, supra, discussed in Note, A Father's Right to Visit His Illegitimate Child, 27 Ohio St. L.J. 738, 740 n. 22 (1966). But see Sullivan v. Bonafonte, supra.
The trial judge is vested with great discretion in evaluating the case presented by the custodial parent who seeks to deny parental visitation rights to the other. Spencer v. Spencer, 273 So.2d 605 (La.App. 4th Cir.1973). However, the judge should be guided by several factors in deciding whether to deny or limit visitation: (1) the love, affection, and other emotional ties existing between the parties and the child, Litton v. Litton, 299 So.2d 458 La.App. 2nd Cir.1974) (father's remarriage emotionally upset child), Favrot v. Favrot, 219 So.2d 594 (La.App. 1st Cir.1968) (visitation caused emotional upsets in children), In re Lathrop, 2 Kan.App.2d 90, 575 P.2d 894 (Kan.App. 1978) (father prevented by mother from establishing close relationship with child), Radford v. Matczuk, 223 Md. 483, 164 A.2d 904, 88 A.2d 140 (1960) (father abandoned child for ten years), In re Heller, 184 Misc. 709, 54 N.Y.S.2d 734 (1945) (visitation from father would have caused neurotic state in child because of child's relationship with mother); (2) the capacity and disposition of the parties involved to give the child love, affection, guidance and continuation of the educating and raising of the child, Lawson v. Lawson, 311 So.2d 624 (La.App. 3rd Cir. 1975) (visitation limited in mother's home since that home had atmosphere of fear and hostility, harsh punishment and vile and abusive language whereas father's home had atmosphere of peace and trust), Franz v. Franz, 230 So.2d 450 (La.App. 4th Cir. 1970) (visitation with mother denied because of her frequent "drunken condition" and her use of "vile and abusive language"), Grant v. Grant, 231 So.2d 411 (La.App. 1st Cir.1970) (visitation allowed but conditioned upon father's not drinking), (3) the capacity and disposition of the parties involved to provide the child with material needs, Roshto v. Roshto, supra (failure to pay support is not necessarily determinative of visitation forfeiture), Matter of Pierce v. Yerkovich, 80 Misc.2d 613, 363 N.Y.S.2d 403 (1974) (father established $59,000 irrevocable trust), Annot., 51 A.L.R.3d 520 (1973), (4) the length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity, Ogden v. Ogden, 220 So.2d 241 (La.App. 1st Cir.1969) (visitation limited since children were emotionally upset at having "two homes"); (5) the relationship of the child's mother and father, Goode v. Goode, 415 So.2d 321 (La.App. 2d Cir.1982) (visitation with father ordered despite opposition by mother and daughter because mother's animosity and use of child as weapon constituted abuse of child), Gay v. Cairno, supra (strained relations between parents make visitation in front of the child undesirable); (6) the moral fitness of the parties involved, Larroquette v. Larroquette, supra (in home or overnight visitation prohibited because of father's permanent illicit relationship); (7) the reasonable preference of the child, Lawson v. Lawson, supra, Lemoine v. Lemoine, 303 So.2d 520 (La.App. 1st Cir.1974) (reasonable preferences of child should be considered, but court may use its powers to enforce visitation over wishes of child); (8) the willingness and ability of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the parent, Nieto v. Nieto, 276 So.2d 362 (La.App. 4th Cir.1973) (wife consented to liberal visitation), Gallagher v. Gallagher, 212 So.2d 233 (La.App. 2nd Cir. 1968) (trial judge should act according to wishes of parties if possible); (9) effect of visitation upon physical condition of child, Doherty v. Mertens, 326 So.2d 405 (La.App. 3rd Cir.1976) (air quality in Baton Rouge required restrictions upon visitation because of child's allergic condition), Phelps v. Phelps, 258 So.2d 112 (La.App. 2nd Cir.1972) *379 (child had congenital heart condition which merited special consideration). See generally Annot., 88 A.L.R.2d 148 (1963). Cf. 18 Mich.Stat.Ann. § 25.312(3) [M.C.L.A. § 722.23].
Although these factors are helpful to the resolution of the question, they should not be applied mechanically to the facts of the case. Mnookin, Child Custody Adjudication: Judicial Functions in the Face of Indeterminacy, 39 L. & Contemp. Probs. 226, 229 and 257-72 (1975) cited in Blakesley, supra at 348. Moreover, the "best interest" standard can only be correctly applied with a real cognizance of the widely accepted view that it is generally in the child's best interest to have continued contact with noncustodial parents. Donovan v. Donovan, 212 N.W.2d 451, 453 (Iowa 1973); Bishop, Child Custody; An Overview, 53 Conn.B.J. 269, 277 (1979) citing views of Fernando Colon, Ph.D., and Margaret Cotroneo, M.A., M.S.W.; Kelly & Wallerstein, The Effects of Parental Divorce: Experiences of the Child in Early Latency, 46 Am.J. Orthopsychiatry, 20, 26-28 (1976); Rosen, Children of Divorce: What They Feel About Access and Other Aspects of the Divorce Experiences, 617, J. of Clinical Child Psychology, Summer 1977 24, 25-26 (Summer 1977); Watson, The Children of Armageddon: Problems of Custody Following Divorce, 21 Syracuse L.Rev. 55, 85 (1969) ("No matter what type of parents the child has, sooner or later he must see them in accurate perspective and eliminate whatever fantasies he may have had about them. This ... can only come about through continued and intensive contact"). Visitation is "important for a child's whole growth, mental, physical and spiritual" and denial of visitation can make a child feel rejected and confused. Pierce v. Yerkovich, 80 Misc.2d 613, 363 N.Y.S.2d 403, 410 (Fam.Ct.1974).
The child's experience of family continuity and connection is a basic and fundamental ingredient of his sense of self, of his sense of personal significance and his sense of identity. While a child is cut off from one of his parents ... there is, for the child and the parent ... a mutual sense of deep personal loss.
Denying a child the ability to visit with and know the non-custodial parent does deep and profound violence to the child's opportunity to know himself in a whole way.
Bishop, supra, at 277. See generally, Comment, Visitation Rights: Providing Adequate Protection for the Noncustodial Parent, 3 Cardozo Law Review 431, 433-35 (1982).
The presumption in favor of visitation can only be overcome by conclusive evidence that the parent has forfeited his right of access by his conduct or that exercise of the right would injuriously affect the child's welfare. See Roshto v. Roshto, supra; Griffin v. Van Griffin, 267 N.W.2d 733 (Minn.1978) (evidence must be "persuasive"); Kresnicka v. Kresnicka, 42 A.D.2d 607, 345 N.Y.S.2d 118 (1973) (evidence must be "substantial"). Cf. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (evidence must be "clear and convincing to terminate all parental rights"). See Johnson v. Johnson, supra; Jacquet v. Disimone, supra. In other words, a parent is entitled to reasonable visitation rights unless it is proved conclusively that visitation would endanger seriously the child's physical, mental, moral, or emotional health. Uniform Marriage and Divorce Act, § 407, 9A ULA 207 (1973).[2]
In the case of putative parents, for example, visitation has been denied in cases in which: (1) the duration, nature, and extent of the relationship between the mother and father was not sufficient to warrant recognition of the father's status as a parent, E.R. v. D.T., 77 Misc.2d 242, 353 N.Y.S.2d 612 (1974) (child conceived when sixty-one *380 year old father raped thirteen year old mother); Sullivan v. Bonafonte, supra, (father refused to marry mother and urged her to have an abortion); (2) lack of interest was shown by the non-custodial parent in the child's life, Baehr v. Baehr, 56 Ill. App.3d 624, 14 Ill.Dec. 401, 372 N.E.2d 412 (1978) (father did not try to see his child for six years); (3) visitation would have detrimental emotional effects upon the child, Baehr v. Baehr, supra, (psychologists established that visitation by natural father would have been disruptive to son's adjustment and development, since father had shown no interest in son for over six years; child testified that he did not want a relationship with his natural father because he was afraid his father would leave him again). See generally State ex rel. Wingard v. Sills, supra.
In the present case, the trial judge's reasons for judgment stated, in pertinent part, as follows:
Defendant mother has since married and the child lives in her home with she (sic) and her husband. This court was impressed that defendant mother and her husband appeared deeply concerned with the welfare and best interest of the child.
This court was not impressed with plaintiff's professed love and concern for the child: Callously bring the child into being under the cloud of illegitamacy (sic), he would perpetuate the stigma and inflict upon the child and all those about the child the knowledge of this reminder illegitamacy (sic) as an ever-constant reminder to the child and those about the child of the child's misfortunate and stigmatized birth. If this is love and concern it is not the love and concern that has the best interest and the welfare of the child at heart.
Thus, the trial judge denied the father any visitation with his child solely because the child is illegitimate. Accordingly, for the reasons expressed above, the trial court's judgment was based on an error of law and should have been reversed by the court of appeal.
The court of appeal, apparently aware of the error committed by the trial judge, affirmed for different reasons. The court pointed to testimony by the mother to the effect that while she and the father were living together he had walked through the house unclothed, that he had taken showers with his six year old daughter born of his marriage with another woman, and that he had allowed the six year old to enter the bathroom with him or while he was present. The mother testified that, following her separation from the father, two and one-half year old Michelle, after visits with her father, had displayed a curiosity about the "private area" of the mother's husband and that on one occasion Michelle "patted" him "between the legs." The mother, however, conceded that she desired to terminate the father's visitation and his child support payments so that her husband could adopt Michelle.
The court of appeal concluded from these facts that
the testimony of the defendant regarding the behavior of the plaintiff in the presence of Michelle and his other daughter and her description of Michelle's behavior when she returns from her visits with the plaintiff was adequate basis for the district judge to conclude that it was not in the best interest of Michelle to continue her visits with the plaintiff and to further conclude that Maxwell had forfeited his rights to visitation by conduct.
However, the trial judge's decision was based solely on his mistaken view that a person who fathers an illegitimate child forfeits any right to visitation with the child simply because of the illegitimacy. The trial judge did not mention the behavior testified to by the mother, who was clearly not a disinterested witness. Furthermore, the father's misconduct does not appear to have been permanently harmful to the child or so substantial as to warrant permanent termination of his visitation with her under all circumstances. On the present record, it would appear that the father, at least, should be permitted supervised visitation with his child on a restricted basis. In any *381 event, the evidence as to the father's misbehavior is sketchy at best, and we think in the interest of justice the matter should be remanded to the trial court for his evaluation in the light of the correct principles of law.
One final matter was called to our attention by the defendant. The appeal in this matter was not perfected until forty days after the judgment of the trial court was signed. Since Code of Civil Procedure article 3943 provides that the appeal period from a custody judgment is thirty days, and visitation is a form of custody, Downey v. Downey, supra, the defendant argues that the untimely appeal taken by the plaintiff deprived the court of appeal of jurisdiction in this case, and resulted in a decision that is a nullity. The defendant argues that the judgment of the trial court in this matter is therefore final, and the writ application by the plaintiff should not have been granted.
Notwithstanding the fact the defendant has never filed a motion to dismiss the appeal taken by the plaintiff, C. of Civ.Proc. art. 2161, nor filed an action in nullity, C. of Civ.Proc. art. 2001, we find other grounds upon which to reject this argument. The trial judge specified in the judgment that he was on vacation, and the judgment was rendered under La.R.S. 13:4208. That statute provides in pertinent part:
In all such cases which are appealable, the judges, at the time of rendering their judgments, shall grant an order of appeal.... Either party to any such suit, upon filing the required bond, may take an appeal, which shall have the same legal effect as if granted in open court. The clerk of court as aforesaid, shall file same and issue notices of the decree to all the parties to the suit, or to their attorneys of record ... and the sheriff shall serve the notices. The time granted parties under existing laws to take appeals, in cases where decrees are rendered under this section, shall begin to run from the time of the service upon the parties or their attorneys, unless notice has been waived. The statute seems to imply that no motion for an order of appeal is required, and the trial judge in his judgment automatically granted an appeal to all parties, as he is required to do by the statute. We do not reach this question, however, since the record clearly shows that the notice of judgment was mailed by the clerk to the parties, and not served by the sheriff, as the statute also requires. Thus, the time for an appeal never started to run, and the plaintiff's appeal, whenever it was perfected, was timely.

DECREE
The judgment dismissing the plaintiff's case is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Act 307 of 1982, amending Article 146 and 157 of the Civil Code and creating a legal preference in favor of joint custody, is likely to reduce the importance of visitation rights for the non-custodial parent. Previously, visitation had been utilized to attempt to circumvent the rule that custody of children should not be divided. See e.g., Johnson v. Johnson, supra; LeBouef v. LeBouef, 325 So.2d 290 (La.App. 4th Cir.1975); Cook v. Wingo, 281 So.2d 867 (La.App. 3rd Cir.), writ denied, 284 So.2d 336 (La. 1973). Nevertheless, visitation will continue to be an important right for non-custodial parents who do not qualify for joint custody, or for parents who prefer the more traditional model of sole custody of their children. See generally, Note, Louisiana's New Joint Custody Law, 43 La.L.Rev. 759 (1983); Comment, Joint Custody in Louisiana, 43 La.L.Rev. 85 (1982).
[2] See Solomon v. Solomon, 84 Ill.App.3d 901, 907, 40 Ill.Dec. 197, 202, 405 N.E.2d 1289, 1294 (1980), which adopted this specific formulation over the less strigent "best interest" standard. Only in extreme circumstances should the trial court find that a permanent deprivation of visitation rights has been proven. Frail v. Frail, 54 Ill.App.3d 1013, 12 Ill.Dec. 680, 370 N.E.2d 303 (1977); F. Keezer, Law of Marriage and Divorce § 723 (3rd Ed. 1946).