STOKER, Judge.
We granted a supervisory writ in this case on application by the State of Louisiana, Department of Social Services, Office of Community Services, to review a judgment *1289 which reinstated H.D.’s visitation with his three minor children, C.D., A.D., and D.D. We called this case up for full review due to concerns over a possible conflict in the law and to examine the record for manifest error or abuse of discretion. We affirm the judgment reinstating visitation.
BACKGROUND
On December 27, 1991, the State filed a petition to have C.D., A.D., and D.D. adjudicated “children in need of care.” The State based the petition on reasons outlined in the affidavit of Sharon Hitchens, (Social Services Specialist) an employee of the State of Louisiana, Department of Social Services, Office of Community Services, Parish of Beauregard. The affidavit contained allegations of sexual abuse by H.D., father of the children.
On the same day the petition was filed, (December 27, 1991) an “Oral Instanter Order” was issued and the children were placed in the temporary custody of the State, through the Department of Social Services; this oral order was confirmed on December 30, 1991.
On December 4,1991, and January 2,1992, the parties entered into stipulations in which they agreed, among other things, that the Department would provide supervised visitation between H.D. and the children; later the trial judge signed an order to that effect.
On May 1, 1992, H.D. and S.D., his wife (the mother of the children) stipulated to the legal status of their three minor children as “children in need of care,” but they did not stipulate to the facts set forth in the petition giving rise to the action. H.D. and S.D. also stipulated that the children would remain in the custody of the State, through the Department of Social Services. The parties further stipulated that the parents would have visitation with their children in accordance with the Department’s family plan as previously prepared by all parties. An “Adjudication Judgment” to that effect was signed on May 12, 1992.
On October 26,1992, the court issued an ex parte order temporarily discontinuing visitation between the children and their father, H.D. We have found no oral or written reasons issued by the court in the record for the court’s action in this regard.
A-contradictory review hearing was held on the issue of visitation on January 6, 1993. H.D. at all times has denied that he sexually abused the children. He and his wife stipulated to the “children in need of care” status regarding their children but did not stipulate to the facts set forth in the petition. Therefore, in order to rule on the issue of suspension of visitation, the court had to make a finding regarding the allegation of sexual abuse by H.D. The court found that H.D. had sexually abused the children, but did not feel that there was enough evidence to indicate that the detriment to the children would be so substantial that monthly supervised visits in a safe and controlled environment with the children would be that detrimental. Accordingly, the court rendered judgment on January 6, 1993 continuing the children in foster care and reestablishing visitation between the children and H.D. on a once a month supervised basis. The trial judge signed a formal judgment to that effect on January 14, 1993.
On January 11, 1993, the State filed a “Motion to Reconsider Order”; the court denied the request for rule. On February 11,1993, the State filed a “Notice of Intent to Apply for a Writ of Review and/or a Supervisory Writ; Motion to Fix Time Limit and for Stay of Proceedings.” The court then issued an order staying the ruling allowing H.D. to exercise visitation with the children pending disposition of the State’s writ application. The State filed the writ application with this court on February 18, 1993. On June 15, 1993, we granted the writ and maintained the stay of visitation pending further action by this court.
ISSUES
This case presents two issues. The first issue concerns the State’s insistence that in child abuse cases the law in this state requires that courts deny parents visitation *1290 with their children whom they have sexually abused until the court finds that the parent “has successfully completed a treatment program designed for such sexual abusers, and that supervised visitation is in the children’s best interest,” as provided in LSA-R.S. 9:364 (D).
We reach the second issue only if we find that completion of the treatment program mentioned above is not required. The second issue is whether the trial judge committed manifest error or abused his discretion in allowing the children’s father, H.D., to have supervised visitation with the children. At the time of the trial judge’s ruling, Article 133(A) of the Louisiana Civil Code (LSA-C.C. art. 133(A)) provided that the prohibition should be applied “until such parent proves that visitation would not cause physical, emotional, or psychological damage to the child.”
Even if Article 133 alone governs, the State urges that we should reverse and set aside the trial judge’s allowance of supervised visitation by H.D. with his children.
Fundamentally, this case touches on the sensitive issue of whether the ultimate decision in such situations shall rest in the courts or the social service agencies of the State.
APPLICABLE LAW AND POLICY
Recently, the Louisiana legislature has given its attention to stating a public policy governing visitation rights to be accorded to abusive parents whether the abuse is physical, sexual or exploitive. The statutory law is in the process of evolving, and different statutes are in conflict. The State’s writ application caused us to focus particularly on the following code articles and statutes:
1. C.C. art. 133 (formerly Article 147) originally added by Acts 1986, No. 966, § 1 and amended by Acts 1989, No. 546, § 1
2. R.S. 9:574 added by Acts 1986, No. 327, § 1
3. The Post-Separation Family Violence Relief Act: R.S. 9:361 et seq. (particularly Section 364 D), added by Acts 1992, No. 1091, § 1
All three of the statutes listed above appear to have had the same objective. Each statute comes into play when a court finds that a parent has sexually abused his or her child. Civil Code Article 133(A) required that, upon making such a finding, the “court shall 'prohibit visitation between the abusive parent and the abused child until such parent proves that visitation would not cause physical, emotional, or psychological damage to the child." (Emphasis added.) R.S. 9:574 read the same as C.C. art. 133(A) except that it was permissive whereas C.C. art. 133(A) was mandatory, i.e. the latter requires the prohibition until the abusive parent makes the specified proof.
Amendments to the law by the Legislature in 1993 transferred Article 133 from the Civil Code to Title 9 of the Louisiana Revised Statutes where it appears as LSA-R.S. 9:341. Acts 1993, No. 261, §§ 5 and 9. The amendments eliminated the conflict between former Civil Code Article 133 and LSA-R.S. 9:574 as the latter was repealed by Section 9 of the Act. Section 341 is couched in the mandatory terms of former Article 133. Section 341 of Title 9 (reading substantially the same as former Civil Code Article 133) provides:
§ 341. Restriction on visitation
“A. Whenever the court finds by a preponderance of the evidence that a parent has subjected his or her child to physical abuse, or sexual abuse or exploitation, or has permitted such abuse or exploitation of the child, the court shall prohibit visitation between the abusive parent and the abused child until such parent proves that visitation would not cause physical, emotional, or psychological damage to the child. Should visitation be allowed, the court shall order such restrictions, conditions, and safeguards necessary to minimize any risk of harm to the child. All costs incurred in compliance with the provisions of this Section shall be borne by the abusive parent.
“B. When visitation has been prohibited by the court pursuant to Subsection A, *1291 and the court subsequently authorizes restricted visitation, the parent whose visitation has been restricted shall not remove the child from the jurisdiction of the court except for good cause shown and with the prior approval of the court.”
Source:
C.C. Art. 133 (rev. 1986 and 1989).
The source of Section 341, it will be noted, goes back to legislative action in 1986. The State urges that later law, the 1992 statute which is more restrictive than Section 341, should have been applied by the trial court. LSA-R.S. 9:364 D, is part of the “Post-Separation Family Violence Relief Act.” Acts 1992, No. 1091, § 1. This statutory authority provides:
“D. If any court finds that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children,' until such time, following a contradictory hearing, that the court finds that the abusive parent has successfully completed a treatment program designed for such sexual abusers, and that supervised visitation is in the children’s best interest. Any testimony by a licensed mental health professional with training, experience, and expertise in treating sexual abuse victims, who is the therapist for the abused child, shall be given greater weight by the court than other testimony on issues of visitation.”
Added by Acts 1992, No. 1091, § 1.
By implication the statute applies only in situations where the State is not involved and the custody of the children is given to one of the parents. See statement of purposes in LSA-R.S. 9:361. The State nevertheless urges that this statute should apply in cases like the present ease where children have been adjudicated in need of care, sexual abuse has been found and the children have been taken from the parents. Requiring a parent who has sexually abused his or her child to successfully undergo professional psychological therapy has been a condition applied even without the benefit of LSA-R.S. 9:364 D. Clark v. Clark, 550 So.2d 913 (La.App.2d Cir.1989). In Clark, in a post-divorce action the trial judge did on his own what LSA-R.S. 9:364 D purports to require. He did so under the authority of Civil Code Article 147, predecessor of Article 133 and now LSA-R.S. 9:341. The Court of Appeal for the Second Circuit affirmed.
We agree that under Clark and LSA-R.S. 9:341 a trial court could impose the requirement of successfully completing a treatment program. The question here is whether LSA-R.S. 9:364 D applies, and therefore is mandatory, requiring that a trial court impose such a condition as a prerequisite for the parent being accorded supervised visitation. We are unable to conclude that Section 364 D should apply here rather than the less restrictive provision of Section 341 (former Civil Code Article 133). Any suggestion that the Post-Separation Family Violence Relief Act is later legislation and should govern over earlier legislation is not valid for two reasons. To begin with it is not clear that Section 364 D should apply where the State has custody of children in need of care. Secondly, as we have shown, the Legislature in 1993 saw fit to transfer Article 133 from the Civil Code to Title 9 so that the latest legislative attention was to the less restrictive condition.
Admittedly the situation is unclear and perhaps deserves further legislative consideration and clarification. Nevertheless, we can discern from the legislative history sketched above that one thing is clear: it is the public policy of this state that, where parents have been guilty of sexual abuse of their children, it is the best interest of the children which should govern judicial action in granting visitation rights and not the normal visitation rights of the parents. See LSA-Ch. C. art. 681. Our conclusion is that the trial judge in this case was not required to apply LSA-R.S. 9:364 D. Therefore, the trial judge was not prohibited from allowing H.D. visitation privileges although he had not undergone the treatment program for sexual *1292 abusers as provided in Section 364 D. LSA-C.C. art. 133 applied and required only that H.D. prove that visitation would not cause physical, emotional, or psychological damage to his children.
THE TRIAL JUDGE’S RULING
Review of the record in this case shows that the trial judge examined the unfortunate circumstances with sensitivity and deep concern for the interests of all parties. He clearly appreciated the testimony of the witnesses and gave due consideration to the opinions and recommendations of the State’s witnesses. We set forth here in pertinent part the trial judge’s comments contained in his oral reasons for judgment.
“BY THE COURT:
Well, as I had started to say, I’ll deal with the easy part first, which is that it’s clear that these children need to remain in the custody of the State and in foster care for the foreseeable future.
⅜ * ⅜: * ⅜ ⅜
The Court is satisfied, on the basis of what it has heard today from the psychologists and [the children’s mother], that there has [sic] abuse in the home, and that there has been sexual abuse in the home, Mr. [attorney for the father]. I recognize that your client does not acknowledge that at this point, but I’m satisfied, on the basis of what I’ve heard, that there has been sexual abuse of the children and probably of Ms. [the wife and mother] as well, based upon her description of the events that have occurred. And insofar as Mr. D. [the father] ever being involved with the custody of the children or unsupervised visitation, as long as his acknowledgement— as he fails to acknowledge his involvement in this abuse and is involved in denying the abuse, it does not appear to me that there’s going to be a possibility of reuniting him and his children until they are substantially older and able to have enough strength, both emotionally and psychologically, to protect themselves from this.
Having said that, however, I do not agree with Dr. Roberts [the State’s expert witness]. I am sorry. There is simply not enough evidence that what Dr. Roberts is describing is any more than inefficient therapy.
It may take the children longer to deal with the issue, but we have other interests that we have to balance here, and that is the right, and this is not an emotional thing, M. [assistant district attorney], it’s the right of a parent to have contact with their children.
And I am going to order that Mr. [the father’s] visitation be re-established on a once a month basis. It is to be supervised. It is to be supervised by a person that the children have a relationship with and are familiar with. I don’t want any receptionist in there. I want someone that the children feel comfortable with.
I recognize that accepting as I do the majority or the bulk of the psychiatric and psychological testimony that I’ve heard today, that I am acknowledging that the children may have difficulty in their counseling and may take longer to work through their counseling, but as I say, it is not efficiency in psychological counseling that is the only issue here. We’re also concerned with the rights of parents, and I do not feel that there is enough evidence to indicate that the detriment to the children will be so substantial that monthly supervised visits in a safe and controlled environment with the children is [sic] going to be that detrimental.
I reserve the right to reverse this opinion in six months when we have the next review hearing. I would expect that I would receive quarterly therapy reports from all therapists that are involved in this transaction, working either with [the father, the mother], or the children.”
⅜ ⅜: ⅜ ⅜ ⅜ ⅜
*1293 The trial judge then discussed the question of visitation by the mother of the children and directed the State to permit her to visit with the children as the Department of Social Services felt it was appropriate. As to the future, the trial judge continued as follows:
“But I am not satisfied, on the basis of what I have heard today, that the detriment to the children with controlled supervised visitation is going to be such that [the father] should be prevented from having all contact with his children. That is the judgment of the Court, and I will sign an order to that effect when it is submitted for signature.”
ISSUE OF MANIFEST ERROR OR ABUSE OF DISCRETION
After carefully reviewing the testimony of the expert witnesses and social workers involved in this case, we conclude that the trial judge did not manifestly err or abuse his discretion in ordering supervised visitation with his children. All of the testimony established that the children have ambivalent feelings toward their father. They love him, and at least the two older children appear to have relished the limited visitation under supervision permitted after the children were removed from the custody of the parents. Nevertheless, some anxiety results from contact between the children and the father.
At the time of the hearing the children consisted of C.D., a girl eight years old, A.D., a boy six years old and D.D. a five year old girl. The two older children initially denied any sexual abuse, but later admitted to some vague nonspecific sexual contact. The youngest girl indicated that her father touched her in her vaginal area. Considering the record, we find that the trial judge reasonably concluded that H.D. had sexually abused his children despite H.D.’s denial.
The State’s position that H.D. should be denied any contact with his children is based in part on one very disturbing aspect. Dr. Samuel Roy Williams, Jr., a Clinical Psychologist, testified for the State and said that H.D. should have absolutely no contact with his children. His reason is that until a parent admits sexual abuse with children, the parent cannot be treated. Therefore, the parent should not be permitted any visitation. Dr. Williams admits that continuing contact of children with their natural parents is generally in the best interest of the children. Nevertheless, Dr. Williams affirms that as a rule of thumb he recommends denial of visitation where a parent refuses to admit sexual abuse. See Tr. 195-197.
Dr. Brenda Roberts also testified for the State. She is a mental health counselor in private practice and holds a doctors degree in mental health counseling. Dr. Roberts recommended no contact between the children be continued because the visits were confusing and anxiety provoking to the children. Tr. 230 and 238. Dr. Roberts determined from the foster parents of the children that in supervised visits before visitation was cut off that the children’s reaction to their father was hot and cold, varying from “running and jumping on his lap to with [D.D.] slapping him.” Tr. 237. Yet, despite these reactions, Dr. Roberts admitted the reactions exhibited some love and affection for their father. Then, on cross-examination, Tr. 238, Dr. Roberts testified as follows:

“Q Are you aware that Mr. [H.D.] has cooperated in every manner whatsoever with the Department and has actually done everything they’ve asked him to do?

A Yes.

Q Under what circumstances would you recommend a resumption of supervised visitation between the children and Mr. [H.D.]?

A Well, see, the reason that — my reason for recommending that visitation continue to be ceased is that Mr. [H.D.] has not taken any responsibility for what the children have reported in terms of the sexual abuse. Therefore, my recommendation for resumption of visits would have to be tied in voith him being involved in *1294 counseling that dealt with a sexual abuse issue.

Q So your recommendation, then, is based explicitly on that, not a lack of love or a sense of danger in a supervised visitation setting, but simply the fact that he has not admitted anything.

A To the children, yes.

Q To the children.

A Yes, which as I placed in my reports, which is extremely confusing and anxiety provoking to the children.”

The trial judge questioned Dr. Roberts extensively concerning her opinion that continued contact between the children and their father inhibited their counseling therapy and its relation to the father’s continued denial of the sexual abuse described by the children. Tr. 240-243. Dr. Roberts was adamant in her opinion that the father’s continued denial in some manner adversely affected the counseling therapy being given to the children. She felt that any visitation traumatized the children despite their obvious feelings of affection for him.
The trial judge was obviously not impressed by the recommendations of the expert witnesses that contact with H.D. should be completely cut off until he admits his behavior with the children or that the nature of the traumatization was as detrimental as they claimed.
Diane Manning was called as a witness for H.D. Tr. 261-269. Ms. Manning is a Family Service Worker and is a Client Service Worker with the Office of Community Services of the Department of Social Services. She was the foster care worker who observed from time to time the visitation between the parents of C.D., A.D. and D.D. before the order terminating visitation was entered. She testified that the visitation took place at department offices and described the activities which took place between the children and the two parents. She testified they would tell H.D. they loved him, would hug him, crawl on his lap or sit beside him, and talk to him. They would spend most of the time with their father rather than their mother. In response to questions posed by the trial judge concerning the reluctance of the youngest child to enter the room on the last visit between H.D. and the children, Ms. Manning stated that this occurred about the time the children began opening up and describing things which happened with their father before they were taken from the parents, and this was one of the reasons the State asked for temporary termination of visitation.
Although the parents had or were apparently in the process of separating, S.D. testified she would like to see her children have some type of continued contact with H.D. under supervised visitation.
For the reasons given above, we find no manifest error or abuse of discretion in the judgment and order of the trial judge dated January 14,1993 embodying his ruling handed down on January 6, 1993, in which he ordered the reestablishment of visitation between H.D. and his children once a month under supervision of “a person the children know and are comfortable being around.” We emphasize, of course, that all future consideration concerning visitation shall be made in accordance with the well-established law and public policy of this State that the best interest of the children shall be the paramount consideration.[2]
DISPOSITION
In view of our conclusions, we recall the writ granted in this matter on June 15, 1993 and affirm the judgment reinstating supervised visitation. We vacate and set aside the stay order we issued on that date maintaining the order of the trial court staying its ruling pending application to this court for exercise of its supervisory jurisdiction.
WRIT RECALLED; AFFIRMED and STAY ORDER SET ASIDE.

. For a general discussion in another factual context, of the rights of visitation of a non-custodian parent as balanced against the best interests of his or h?r children, see Maxwell v. LeBlanc, 434 So.2d 375 (La.1983).