IJCUHN, J.
This appeal arises out of the visitation provisions of a joint custody plan. The plan imposed a restriction on the minor child’s travel that affects the father’s visitation rights. Defendant, Charles V. Mathews, appeals the trial court’s judgment denying his request to have the restriction lifted. The restriction at issue provides that the minor child shall not be taken to Nigeria for purposes of exercising visitation. We affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
During January of 1998, plaintiff, Anne-Marie Gouhier Mathews, filed a petition for divorce. Therein, Mrs. Mathews alleged that: 1) she is a domiciliary of East Baton Rouge Parish; 2) Mr. Mathews is a domiciliary of the state of Texas but is temporarily residing in Nigeria; 3) she and Mr. Mathews have been married since December of 1991; 3) one child, Jennie MargareL-Anne Mathews, was born of the marriage, on June 7, 1996; and 4) she and Mr. Mathews separated on December 18, 1997. Mrs. Mathews requested that temporary and permanent custody of Jennie be granted to her. During September of 1998, the parties signed a stipulated judgment that awarded joint custody of Jennie to Mr. and Mrs. Mathews, and designated Mrs. Mathews as the domiciliary parent. The judgment ordered that Mr. Mathews is to have custody of Jennie for four two-week periods during scheduled trips to the United States. The judgment further ordered, in pertinent part:
[Mr. Mathews] shall have an additional four (4) week period of visitation with [Jennie] to be exercised in the United States or Europe once a year. However, the minor child shall not be taken to Nigeria for the purpose of exercising his visitation. This restriction on the child not being taken to Nigeria for visitation is set without prejudice to the right of [Mr. Mathews] to reset this matter for hearing before the Court for a decision as to whether such a restriction is necessary to protect the best interest of the minor child.”
On June 7, 1999, a hearing was held to address Mr. Mathews’ request to have the restriction against travel to Nigeria lifted to allow for his visitation with Jennie in Nigeria |3for four weeks each year.[2] At the end of the hearing, the trial court rendered judgment denying Mr. Mathew’s request. The trial court found that the proposed travel to Nigeria was not in Jennie’s best interest, considering her tender age of three years, the conditions in Nigeria, and the extensive travel required to reach this destination.[3] Subsequently, a judgment in conformity with these reasons was signed. Mr. Mathews appeals, urging the trial court was manifestly erroneous in maintaining the travel restriction.
II. ANALYSIS
Each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the children. Remson *529 v. Remson, 95-1951, p. 4 (La.App. 1st Cir.4/4/96), 672 So.2d 409, 411; Muller v. Muller, 94-281, p. 8 (La.App. 3d Cir.10/5/94), 643 So.2d 478, 483. The trial court is vested with vast discretion in matters of child custody and visitation, and its determination is entitled to great weight and will not be disturbed on appeal unless a clear showing of abuse of its discretion is made. See Stephenson v. Stephenson, 404 So.2d 963, 966 (La.1981). This broad discretion extends to determinations regarding what constitutes feasible, reasonable visitation. Caro v. Caro, 95-0173, p. 4 (La.App. 1st Cir.10/6/95), 671 So.2d 516, 519.
Joint custody determinations are governed by La. R.S. 9:335, which provides in pertinent part as follows:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody |4of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
(3) The implementation order shall allocate the legal authority and responsibility of the parents.
The rights of any parent are always subservient to the best interests of the child and the right of visitation is not without its limitations. However, it is .the burden of the parent seeking to deny access or visitation to prove that the visitation would not be in the best interest of the child. Maxwell v. LeBlanc, 434 So.2d 375, 377-378 (La.1983).
At the hearing, Mr. Mathews testified that he is employed by Cooper Cameron Corporation as a technical sales representative and currently lives and works in Lagos, Nigeria. He testified that he has found no available employment in the United States and intends to remain in Nigeria indefinitely. He travels to the United States approximately four times a year to exercise visitation with Jennie. On each trip, he spends approximately two weeks in the United States, excluding travel time. These trips exhaust his available vacation time. He explained that in order to exercise the additional four week period of visitation to which he is entitled under the terms of the stipulated judgement, Jennie must be allowed to travel to Nigeria once a year.
Mr. Mathews explained that he, Mrs. Mathews and Jennie had lived together in Nigeria for most of the year during 1997. The initial decision to move to Nigeria had been made by he and Mrs. Mathews, and the family had relocated to Nigeria during January of 1997, when Jennie was about six months old. He testified that they resided in a large, comfortable home in an upper-class neighborhood in the suburbs of Lagos. He explained they were afforded the services of a full-time housekeeper and driver. During December of 1997, Mrs. Mathews returned to the United States for a Christmas vacation. She and Jennie have never returned to Nigeria.
| BPuring the hearing, Mrs. Mathews testified that she did not have a good experience while living in Nigeria. She described living in Nigeria as “very intense.” She explained that she was constantly afraid for her safety and Jennie’s safety. She described that drastic security measures were considered necessary. The exterior of the family home was guarded by a “gate-man,” an interior stairway was protected by a metal door bolted with a metal bar, and each bedroom was protected my a metal door with a metal barricade. When they were inside the home, they also activated an alarm. Mrs. Mathews acknowledged that neither she nor Jennie had actually been the victim of crime while they were in Nigeria. However, she explained that her car had been shaken dur *530 ing a fight that erupted during a gas shortage.
Mrs. Mathews was also concerned about her daughter’s health due to the poor living conditions in Nigeria. She described that there was rust and bacteria in the running water. She explained that she had to filter and boil the water she used to bathe Jennie. Mrs. Mathews also constantly took precautions to protect Jennie from mosquitoes because she was fearful that Jennie would contract malaria. Mrs. Mathews testified that prior to traveling to Nigeria, she was required to have vaccines for yellow fever, tetanus and cholera. Mrs. Mathews conceded that although Jennie did not get sick during the time they resided in Nigeria, she herself became sick with symptoms of severe diarrhea and fever from a bacteria.
Since Jennie had been diagnosed with various food allergies after returning from Nigeria, Mrs. Mathews expressed concern that special food products required to accommodate her allergies would not be available in Nigeria. She testified that she had experienced difficulties obtaining groceries while previously there.
With respect to the travel proposed by Mr. Mathews, Mrs. Mathews testified that the trip to Nigeria from Louisiana consisted of eighteen hours of travel time, not considering flight delays and layover time spent waiting in airports. She also testified that American Airlines does not fly to Nigeria due to safety concerns.
| fiDuring the hearing, Mr. Mathews testified that Mrs. Mathews was “reacting a bit out of the ordinary.” He apparently felt that she was overacting to some of the living conditions and that some of her fears were unfounded. Mrs. Mathews testified that after Mrs. Mathews had left Nigeria, steps had been taken to improve the water conditions; a filtration system had been installed and that the water was now “crystal clear.” He reported that there were a number of American class grocery stores that had everything he could possibly want or need for Jennie. He testified that if there were any items that were not available at these grocery stores, he could bring these items with him from the United States. He stated he had not experienced any health problems or problems with crime during the two and one-half years that he had lived in Nigeria. Mr. Mathews acknowledged that during the proposed time that Jennie would visit him in Nigeria, he would be required to work but noted he had arranged for a part-time schedule.
Mr. Mathews urges that Mrs. Mathews has not carried her burden of establishing that the restriction regarding travel to Nigeria is in Jennie’s best interest. Mr. Mathews urges that due to his limited vacation time, the travel restriction prevents him from having contact with Jennie for the four-week period in question. He submits this time is valuable to the development of a relationship with his daughter.
Based on the evidence, we find the trial court did not abuse its discretion in denying the request to have the travel restriction lifted. We disagree with Mr. Mathews’ contention that Mrs. Mathews did not establish that the travel restriction was in Jennie’s best interest. The trial court addressed the factors that supported its decision: Jennie’s young age, the living conditions in Nigeria and the extensive travel involved. The record establishes that the trial court’s concerns regarding these factors are warranted. We are aware that the restriction on Jennie’s travel effectively limits Mr. Mathews’ visitation rights and may ultimately affect the relationship he has with his daughter. However, we conclude the trial court determined that such restriction was warranted to safeguard 17Jennie’s wellbeing, which is of paramount concern. Accordingly, we find no error in the court’s decision.
We note that Mr. Mathews filed a “Motion To Dismiss Appellee’s Answer To Appeal,” which has been referred to the merits of this case. While appellee did not file a formal answer to Mr. Mathews’ appeal, *531 appellee did advance an argument in brief requesting that this court consider evidence that was proffered at trial. Mr. Mathews suggests that by advancing this argument, appellee has incorporated an untimely answer to the appeal in her brief that should be dismissed. We have determined that the record supports the trial court’s judgment without considering the proffered documents. Accordingly, we pretermit the issue raised in Mr. Mathews’ motion, and deny the motion as moot. ■
II. CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. The motion to dismiss appellee’s answer to appeal is denied. Costs of this appeal are to be paid by defendant-appellant, Charles V. Mathews.
JUDGMENT AFFIRMED; MOTION DENIED.

. The record does not contain a motion requesting that the matter be set for a hearing. However, there is no contention by Mrs. Mathews that the matter was not properly before the court during the June 7, 1999 hearing. During this hearing, Mr. Mathews stated that if the travel restriction were lifted he would probably reduce Jennie’s visitation in Nigeria from four weeks to two weeks. He felt the shorter period would be more reasonable based on his concern for Jennie’s comfort and a consideration of his work schedule. Mr. Mathews proposed that Jennie would be accompanied by him and/or his mother during the travel to and from Nigeria.

.The record establishes Jennie's third birthday was on the day of the hearing in this matter.