479 So.2d 1040 (1985)
Diana MOORE, Plaintiff-Appellant,
v.
Margie Hudson MOORE, Defendant-Appellee.
No. 84-976.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
*1041 Porter & Fuselier, Donald R. Fuselier, New Iberia, for plaintiff-appellant.
Cline, Miller & Richard, Larry Thomas Richard, Rayne, for defendant-appellee.
Before GUIDRY, DOUCET and LABORDE, JJ.
GUIDRY, Judge.
This is a dispute over a minor child between the maternal grandparents and the mother. The father of the child, although still living, is not one of the litigants. The mother, Diana Moore, sought, by writ of habeas corpus directed to her mother, Margie Hudson Moore, to regain physical custody of the child. The maternal grandparents, Margie Hudson Moore and Murphy Moore, countered by filing a Petition for Custody praying that they be declared the legal custodians. The district court granted custody to the grandparents. The mother appeals.

FACTS
Plaintiff-appellant, Diana Moore, married Van Raymond Gaspard on August 10, 1979. One child, Kelly Nicole Gaspard, was born of that union on April 10, 1980. Appellant filed for divorce against Gaspard in 1980. However, at the time of this custody dispute, they were still legally married although they were physically separated.
Appellant and her child moved into a home, a converted outdoor kitchen, behind the maternal grandparents' house after appellant and Gaspard separated. Appellant lived under these circumstances until early 1982.
Appellant started to work as a waitress at a truck stop in Lafayette and then as a waitress at a lounge in Crowley at some point between the years 1980 and 1982. When she went to work in Crowley, she also started to hotshot trucks.[1] At any rate, her working necessitated the use of a babysitter for Kelly. From 1980 until April, 1982, when the maternal grandparents took physical custody of the child, the appellant used at least three (3) different babysitters.
Appellant started taking Kelly to the first sitter at seven months of age, and continued with this sitter for approximately one and one-half years. This sitter testified that Kelly was often left with her for three or four days at a time. Apparently the appellant and the sitter had agreed that Kelly could stay with the sitter for various lengths of time. The sitter declared that she knew the appellant would sometimes have trouble picking Kelly up on time because of the appellant's work. The sitter indicated that she was there for just that purpose. She also testified that she knew how to contact the appellant at her place of employment, and had to do so on a number of occasions because the child had been left too long. At one point, this sitter, with appellant's apparent consent, took Kelly on a holiday vacation when the appellant failed to pick the child up on time.
Sitter number two started watching Kelly at nine months of age. This sitter apparently was used during part of the same period as sitter number one. Again there was testimony that the child was left for three day periods of time. However, this sitter also indicated that she knew Kelly would sometimes have to stay overnight. She also testified that she knew how and where to contact the appellant if the need arose.
The third sitter started watching Kelly when the child was approximately 1½ years of age. This sitter testified that appellant left the child for three or four days and that she often was forced to call the maternal grandmother to pick up the child. This sitter indicated that the appellant did not leave a work phone number and did not *1042 indicate that she was going to leave the child for three or four days.
The maternal grandmother testified that she had to pick Kelly up on different occasions from two of the sitters because the appellant failed to do so. She also testified that the appellant left Kelly with one of the sitters for months at a time.
When the maternal grandmother picked Kelly up from the third sitter in February, 1982, the appellant failed to return until April of that same year. By this time, appellant had moved to an apartment in Crowley. Appellant's return in April, 1982, corresponded with the child's birthday. From February to April, the appellant apparently never asked her parents to return Kelly to her. Appellant testified that she did not visit with Kelly because her parents would not let her take the child to Crowley. Appellant contended that she did ask her parents to return the child. However, the maternal grandmother testified that appellant had only requested the return of the child one time through her attorney just prior to this litigation.
After visiting Kelly for a period of time during her birthday in April, 1982, the appellant did not return to visit again until December, 1983. Between these dates, appellant called three or four times, but she only spoke to her mother. During this period, appellant did not support the child in any fashion.
Appellant lived in Crowley until December, 1982, and then moved to Lafayette. She lived with Darrell LeBlanc in Lafayette until the end of December, 1983. LeBlanc testified that during this period appellant used marijuana, cocaine and speed. He also testified that appellant paid for half of the apartment rent by engaging in prostitution. He said he saw men enter the apartment with her, and when he returned, the bed was messed up and she had some money. LeBlanc also testified, on cross-examination, that he once threatened appellant that if she did not return to him, he was going to make sure she never again saw her child.
Appellant denied that she ever worked as a prostitute. She claimed that she had sufficient money in her savings account to pay for her half of the rent. Appellant also admitted that she was unemployed while living with LeBlanc.
Appellant's husband, Van Raymond Gaspard, testified that he left his wife in 1980 when he found her in bed with a biker (motorcyclist) with several other bikers sprawled around the room. He testified that appellant's father also saw at least one of the bikers when he was called by Gaspard to pick up his daughter. The appellant claimed that it was she who found Gaspard in bed with another woman. Gaspard and LeBlanc reinforced each other's testimony in regard to appellant's use of drugs by both indicating that she used marijuana and took pills.
Gaspard, Kelly's legal father, requested that custody be given to the appellees because he could not afford the child and he thought the appellant was not suited to care for her.
Sometime in late 1983 or early 1984, the appellant ended her relationship with LeBlanc. She moved to New Iberia and went to work for Etienne Segura, Jr., who ran a trucking business. The appellant initially worked as a hotshot driver but later performed light-duty office work. Appellant earned from $900.00-$1300.00 per month. Segura testified that she was a reliable employee.
There were allegations that appellant and Segura were living in open concubinage, however, these allegations were never substantiated. Segura rents a three-bedroom mobile home to the appellant, and had sold her a car for transportation. Appellant had prepared a room in the home for Kelly with various furnishings and toys.
Segura also testified that the appellant sometimes took care of his daughter's little girl. He indicated that the appellant was careful in caring for the child and had a good relationship with her.
*1043 Both of the appellees testified that they thought the appellant loved her daughter, but they also thought her lifestyle and behavior indicated that appellant was not fit at the moment to take proper care of the child.
The trial court came to its decision in the following manner:
"The Court heard testimony that the mother has, in the past year, taken drugs, was a prostitute and was a terrible housekeeper. This, together with the circumstances surrounding the mother leaving the child two (2) years ago and her husband's testimony concerning his recommendations, is the basis for the Court's ruling."
The appellant contends, considering the law and the evidence, that the trial court erred in awarding custody of the minor child to the grandparents.
This case involves an application of Louisiana Civil Code Art. 146(B) which states that:
"B. Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings."[2]
The mother argues that the evidence did not present any compelling reasons to deny her custody. She claims that the testimony at the hearing was not sufficient to declare her an unfit mother, and insufficient to prove abandonment. She argues that the court should not use her lack of monetary child support as a factor in determining her fitness, and that the court should not compare the two potential homes involved. She further contends that the testimony concerning the alleged prostitution and drug consumption should be ignored because the witnesses offering said testimony were "out to get her". Lastly, she argues that the acts of adultery involved in this case should not be used to deny her custody because they were isolated instances that took place outside the presence of the minor child.
Initially we note that the ultimate consideration of the trial court in any child custody case must be the best interest of the child under La.C.C.Art. 157. In reaching a determination of best interest, the trial judge must look to the totality of the circumstances. Ferguson v. Ferguson, 398 So.2d 1238 (La.App. 4th Cir.1981).
On appeal, the standard of review to be applied by this court is whether the trial court clearly abused its discretion in awarding custody to a particular person. Bunch v. Bunch, 469 So.2d 1191 (La.App. 3rd Cir. 1985); Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); and other cases too numerous to cite.
Appellant is correct in arguing that lack of monetary child support, alleged prostitution and drug abuse, not visiting a child for extended periods of time, and acts of adultery are circumstances which, standing alone, should not, if sufficiently isolated in the past with reasonable indications of present rehabilitation, be enough to take custody away from the natural parent. However, the trial court does not look at each piece of evidence in isolation. Instead, as appellant herself so aptly argues, the trial court must view the totality of the circumstances. In this regard, past misconduct may form an important consideration in determining present suitability. Gautreaux v. Allen, 345 So.2d 103 (La. *1044 App. 1st Cir.1977); Bunch v. Bunch, supra.
Before we turn to the question of whether the evidence presented gave the trial court compelling reason to find that custody should be given to the grandparents, we feel that it is important to note that the judiciary has been given more freedom or latitude to pursue the goal of insuring that the best interest of the child is served in resolving custody disputes between parent and non-parent litigants since the amendment of La.C.C.Art. 146 by Act 307 of 1982. Boyett v. Boyett, 448 So.2d 819 (La. App. 1st Cir.1984); see also our recent opinion in Batiste v. Guillory, 479 So.2d 1044, (La.App. 3rd Cir.1985). Thus, the trial court may look at all present and past acts of misconduct in making its determination of whether "custody to the parent would be detrimental to the child." La.C. C.Art. 146(B).
Appellant's contention that the court should not have believed testimony from certain witnesses, Gaspard and LeBlanc, centers around statements made by the witnesses while under oath. Both witnesses in question basically stated that the appellant should not have custody of the minor, and that they would do almost anything to make sure she did not retain custody. These witnesses testified about appellant's alleged prostitution and drug abuse.
The trial court is in a much better position to determine the credibility of the witnesses and the evidence they present. Absent some manifest error, we must follow the trial court's determination.
In this case, there was evidence that the mother had not been in touch with her own child for an extensive period of time. There was also evidence that within the past year the mother had been involved in drug abuse and prostitution. Appellant's husband's testimony that appellant took drugs while they were living together reinforces the idea that the appellant has a continuing drug problem. Appellant offered little evidence to support any contention of rehabilitation. From this alone, we feel that the trial judge could have concluded that giving custody to the mother would be detrimental to the child.
The appellees in this case have provided a stable environment for the child. They often took care of the child when the appellant was absent for one reason or another. Appellees have been responsible for the health and well being of the child since the mother's departure and have shown that they are able to provide for the minor. Under these circumstances, we feel that the trial court was correct in determining, pursuant to La.C.C.Art. 146, that "the award to a non-parent is required to serve the best interest of the child."
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[1] Hotshotting is the process of driving a truck from oil rig to oil rig or office to office to deliver needed equipment. A person employed in this fashion has to be prepared to leave on a moments notice, day or night, and often has to drive great distances, in or out of the state.
[2] We feel it is important to note that the legal father is not involved in this litigation. We therefore do not, at this time, have to determine whether an award of custody to the father would be detrimental to the child. However, even if he had been one of the parties, we would not be forced, in his case, to use the "detrimental to the child" standard because he requested that the court award custody to the grandparents. The test set forth in C.C. 146(B) is only used when the parent does not consent to the custody award to the non-parent.