502 So.2d 583 (1987)
John Collins GORDY, Plaintiff-Appellee,
v.
Laura LANGNER, Defendant-Appellant.
No. 86-188.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1987.
Writ Denied March 26, 1987.
*584 Marx and Marx, G. Paul Marx, Lafayette, for defendant-appellant.
Burke, Cestia, Landry and Lee, Ralph K. Lee, Jr., New Iberia, for plaintiff-appellee.
Before DOUCET, LABORDE and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether or not the trial court erred in awarding legal custody of a minor child to the child's maternal grandparents, rather than to the child's natural mother.
Laura Gordy Langner (hereinafter defendant) filed a rule for change of custody against her parents, John Collins Gordy and Beatrice Gordy (hereinafter the Gordys), ordering them to show cause why she should not be granted sole legal custody of her son and the Gordys' grandson, Richard Benjamin Langner (hereinafter the child), and why the Gordys should not be held in contempt for interfering with her visitation *585 privileges previously granted by the court. A hearing was held and the district court rendered judgment maintaining custody of the child with the Gordys. The court granted visitation privileges to defendant extending from 10:00 A.M. to 6:00 P.M. on the first and third Sundays of each month. The court also denied defendant's rule for custody and contempt against the Gordys. From this judgment, defendant has appealed. We affirm.

FACTS
Defendant was married and was subsequently granted a divorce on August 12, 1980 from her husband, Richard Alfred Langner. The child, Richard Benjamin Langner, was born of this marriage on October 4, 1978. In the divorce decree, defendant was granted legal custody of the child and she and the child moved in to live with her parents, the Gordys.
In 1982, an incident occurred in which John Gordy found the defendant in bed with a man upstairs in his home while the child was downstairs. The Gordys physically evicted defendant from their home but kept physical custody of the child. The Gordys filed a petition for legal custody of the child. Defendant filed a written answer in proper person and in her answer judicially consented to surrender and abandon legal custody of the child to the Gordys. On June 4, 1982, the court awarded legal custody of the child to the Gordys. This judgment was not appealed.
Soon after the Gordys were awarded legal custody, they took the child to Virginia and placed him under the care of a child psychologist, Dr. Edwin N. Carter. Dr. Carter recommended that the child remain in Virginia in the physical custody of his aunt, Bonnie Neder, another of the Gordys' daughters, and her husband, Donald Neder (hereinafter the Neders). The child resided in Virginia with the Neders for approximately a year, and remained in their physical custody when they returned to Louisiana and moved next door to the Gordys where the Neders and the child now still live.
Defendant filed a rule for change of custody on September 9, 1982. This rule was not heard until August 16, 1983 and at that time judgment was rendered, which was signed on September 13, 1983, maintaining legal custody of the child with the Gordys and granting defendant certain visitation privileges. This judgment also was not appealed. On October 13, 1983, defendant filed a rule for contempt against the Gordys for their refusal to allow her to fully exercise her visitation privileges. After a hearing of this rule on December 14, 1983 the court denied her rule for contempt and amended the visitation granted defendant in the September 13,1983 judgment on rule to establish new visitation privileges for defendant and placed certain conduct requirements on the defendant during such visitation. These requirements included that the child attend church services during any visitation with defendant which included a Sunday; that the child be in bed at an appropriate time during overnight visitation; that defendant would not curse or show undue physical affection to members of the opposite sex in the presence of the child during visitation, and that there would be no overnight male guest during visitation.
On September 27, 1985, John Gordy filed a petition to terminate or limit defendant's visitation privileges, claiming that defendant had not exercised visitation in accordance with the court's previous requirements of the December 14, 1983 judgment. In response, defendant then filed a rule against the Gordys seeking sole legal custody of the child and for contempt against the Gordys for not permitting defendant to exercise her scheduled visitation. The two rules were heard on November 13, 1985.
At the hearing on November 13, 1985 several witnesses testified that defendant had not complied with the previous requirements set by the court for visitation with the child. Dr. Kenneth Bouillion, who had been the child's treating psychologist in Louisiana for over two years at the time of trial testified that the child told him that when he stayed with his mother he did not *586 go to church on Sunday, that a male had been with her overnight, and that she cursed in front of him. The defendant admitted that she had been living with a man for about five years. She married her paramour on November 10, 1985, which was three days prior to the hearing.
The trial court rendered judgment after the hearing in favor of the Gordys and against the defendant. A written judgment was signed on November 19, 1985, maintaining legal custody of the child with the Gordys and granting visitation privileges to the defendant from 10:00 A.M. until 6:00 P.M. on the first and third Sundays of each month. The court also denied the rule for custody and contempt filed by the defendant against the Gordys.
Defendant timely appeals from this judgment, asserting the following assignments of error:
(1) The district court erred in requiring defendant to prove her fitness beyond any applicable legal standard;
(2) The trial court erred in permitting testimony about the defendant's childhood in connection with her fitness to regain custody;
(3) The trial court erred in maintaining legal custody in the grandparents who gave the physical custody of the child to others;
(4) The trial court erred in refusing to order steps recommended to reunite defendant and the child;
(5) The trial court erred in reaching a ruling before all of the evidence had been presented;
(6) The trial court erred in refusing to hold the Gordys in contempt for denial of scheduled visitation without court orders;
(7) The trial court erred in refusing to return legal custody of the child to its natural mother; and
(8) The trial court erred in restricting defendant's visitation with the child.

ASSIGNMENT OF ERROR NUMBER 1
Defendant first argues that the trial court erred in requiring her to prove her fitness beyond any applicable legal standard in order to recover the child. Defendant contends that the proper rule of law is recited in Berzins v. Betts, 457 So.2d 282 (La.App. 3 Cir.1984), as follows:
"[P]arent's right to custody must be upheld unless it is established by convincing proof that he or she is unfit or has forfeited these parental rights ..." Berzins v. Betts, supra, at page 285.
Defendant relies on the former jurisprudential rule established by Wood v. Beard, 290 So.2d 675 (La.1974), in which the parent's right to custody was considered superior to that of a non-parent unless there was a showing that the parent was unable or unfit. In 1982, LSA-C.C. Art. 146 was amended by Act 307 to provide that:
"B. Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings."
Article 146 contains a dual-pronged requirement which must be met before a parent is denied custody of the child and the child is placed in the custody of a non-parent in a contested custody dispute; the trial court must determine that an award of custody to the parent would be detrimental to the child and that the award to a non-parent is required to serve the best interests of the child. Lions v. Lions, 488 So.2d 445 (La.App. 3 Cir.1986); Berzins v. Betts, supra; Boyett v. Boyett, 448 So.2d 819 (La.App. 2 Cir.1984).
When the legislature changed the standard used in awarding custody to nonparents, it expanded the jurisprudential rule of Wood v. Beard, supra. Batiste v. Guillory, 479 So.2d 1044 (La.App. 3 Cir. 1985); Recknagel v. Roberts, 465 So.2d 844 (La.App. 2 Cir.), writ den., 468 So.2d 570, 579 (La.1985); Boyett v. Boyett, supra. *587 Under the article, as amended, the courts have been given more freedom and latitude to pursue the goal of insuring that the best interest of the child is served in resolving custody disputes between parents and nonparents. Boyett v. Boyett, supra. This expansion, through the use of the term "detrimental," allows the trial court to look at a multitude of factors in these parent and non-parent custody disputes. Batiste v. Guillory, supra.
Defendant asserts that the trial court erred in requiring her to prove her fitness for custody when there had never been any considered decree based on a finding of fact that the mother was unfit or should not have custody. Defendant does not dispute her judicial consent and agreement to permit her parents to have legal custody of the child but now belatedly claims that this consent was not voluntary. The judgment rendered on June 4, 1982, after the defendant had answered the Gordy's rule for custody and judicially consented to the Gordys having legal custody of the child, was a considered decree. Certainly the judgment rendered on the defendant's subsequent rule to regain custody of the child, filed on September 9, 1982 and heard on August 16, 1983, was a considered decree. The judgment rendered on defendant's rule for custody was signed on September 13, 1983 and was not appealed. In the judgment on the rule for contempt filed by defendant on October 13, 1983 and heard on December 14, 1983, the trial judge imposed certain requirements on the defendant regarding her conduct during visitation. These requirements included that there would be no overnight male guests during the child's visitation. This condition undoubtedly evolved from the incident in which defendant's father discovered her in bed with a man while the child was present in his home.
Moral fitness of a parent is but one factor, albeit an important one, to be considered when examining the totality of the facts, circumstances, and relationships presented by a particular case in the attempt to reach a decision in the child's best interest. Peters v. Peters, 449 So.2d 1372 (La.App. 2 Cir.1984). The parent's attitude towards living with a man whom she plans to marry is but one aspect of moral fitness.
"In spite of changing attitudes and moral standards, `living together' without benefit of marriage, in a home where young children are present, remains widely regarded as immoral and as necessarily having a detrimental effect on a child's moral upbringing. The courts of this state have consistently, in many reported cases, recognized this fact. In almost every case where the parent lived with someone to whom they were not married, and the situation continued through trial of a custody proceeding, the child was removed from custody of that parent." Peters v. Peters, supra, at page 1374.
It is well settled jurisprudence that in a custody contest between an parent and a non-parent, the parent enjoys a paramount right to custody of the child as against a non-parent. Only where "compelling reasons" have been proven by the non-parent should the parent be deprived of custody. Guidry v. Guidry, 441 So.2d 384 (La.App. 5 Cir.1983). The burden of proof of any of the "compelling reasons" must be carried by the non-parent at the initial custodial contest between them. However, at a subsequent hearing to change custody brought by the natural parent previously deemed unfit, the burden of proof should rest on that natural parent to demonstrate that he or she had rehabilitated and that facts which gave rise to him or her being deprived of custody at the initial hearing no longer exist. Guidry v. Guidry, supra.
The trial judge was obviously satisfied that the Gordys met their burden of proving defendant's continued unfitness for custody of the child at the hearing on defendant's rule for change of custody, filed on September 9, 1982 and heard on August 16, 1983, since he later imposed requirements, at the hearing several months later on December 14, 1983, which were apparently commensurate with defendant's past *588 conduct to prevent such conduct from continuing during visitation. At the subsequent hearing on November 13, 1985, which defendant now appeals, the trial judge found that defendant had not shown that her situation had changed, other than her marrying her paramour, which demonstrated that she could be a responsible parent.
The trial court at the hearing on November 13, 1985 applied a standard that determined the best interest of the child by evaluating the conduct of the mother. In Batiste v. Guillory, supra, this court held in part as follows:
"The `conduct' of the parent is one of the most important factors in determining whether an award of custody to the parent would be detrimental or harmful to the child. The conduct, outward behavior of the parent, creates a role model for the child. If the parent presents a poor role model (injurious conduct), is physically, sexually, or mentally abusive to the child or to those around the child, then the child will have a significantly decreased chance to live a normal, happy, and productive childhood and, later, adulthood." Batiste v. Guillory, supra, at page 1048.
Since the legislature has provided the courts with a rule that expanded the standard set down in Wood v. Beard, supra, we find that the trial court was correct in its application of a standard that determined the best interest of the child by evaluating the past and present conduct of the natural mother, the defendant. We thus conclude that the trial court did not apply the wrong standard in this custody dispute and that this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant's second assertion is that the trial court erred in considering testimony concerning defendant's childhood in connection with her fitness to regain custody of the child. At the hearing, defendant's father testified that as a teenager, defendant was treated for drug abuse, had an abortion at a clinic, and was charged with a felony.
The ultimate consideration of the trial court in any child custody case must be the best interest of the child. In reaching a determination of best interest, the trial judge must look to the totality of the circumstances. Moore v. Moore, 479 So.2d 1040 (La.App. 3 Cir.1985). In reviewing the totality of the circumstances, past misconduct may form an important consideration in determining present suitability of the mother. Moore v. Moore, supra; Bunch v. Bunch, 469 So.2d 1191 (La.App. 3 Cir.1985). Past acts of bad character may tend to show the overall character of the mother. Lake v. Robertson, 452 So.2d 376 (La.App. 3 Cir.1984). Thus, the trial court may properly look at all present and past acts of misconduct of defendant in making its determination of whether custody to her would be detrimental to the child. Moore v. Moore, supra.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 3
In this assignment, defendant asserts that the trial court erred in continuing legal custody in the grandparents who gave physical custody of the child to others. The Gordys took the child to the home of their daughter and son-in-law, the Neders, in Virginia in order to have the child placed under the care of a clinical psychologist, Dr. Edwin Carter. Dr. Carter later reported that the child's aunt and her husband had done an admirable job of transforming the child into a more tractable and manageable youngster, and recommended to the Gordys that the child remain in the custody of the Neders in order to allow the child to eventually reach a normal state of functioning.
After the Neders moved back to Louisiana, the child continued living with them in a home they constructed next door to the Gordys. The child stayed at the Gordys' home at least a third of the time on a nightly basis. Dr. Kenneth Bouillion, a clinical psychologist who saw the child regularly *589 for over two years at the time of the trial, testified it was in the child's best interest that he remain in his present situation with very guarded visitation by defendant, the natural mother.
On appeal, the standard of review to be applied by this court is whether the trial court clearly abused its discretion in awarding custody to a particular person. Moore v. Moore, supra. In his reasons for judgment the trial judge stated:
"The Court is convinced beyond any doubt whatsoever that the child is living in a very stable, healthy environment, and believes that in time, if he continues in this environment, many of the problems that Dr. Bouillion has pointed out will be corrected.
* * * * * *
Considering all of the evidence, the Court is going to allow the grandparents to retain the custody of this child. They are indeed fortunate and lucky, considering their ages, and the burdens and obligations of rearing a young child, to having living next door in their environment, another daughter and her husband with young children, who are willing to share with them in taking care of this child. The Court considers that the arrangement which they have made with their daughter and son-in-law is to the obvious benefit and development of this young child, much to his benefit."
The trial judge is afforded wide discretion in determining which arrangement will best serve the best interest of the child and his determination will not be disturbed in the absence of manifest error. Lachney v. Lachney, 446 So.2d 923 (La.App. 3 Cir.), writ den., 450 So.2d 964 (La.1984). We find that the trial judge did not abuse his discretion in maintaining legal custody of the child in the Gordys, who permitted physical custody of the child with the Neders, and that this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 4
Defendant contends that the trial court erred in refusing to order steps recommended to reunite the mother and child.
The trial court granted defendant visitation privileges of two days a month, which was more liberal than the one day a month recommendation by Dr. Bouillion. The trial judge also stated that if conditions changed, if the marriage of the defendant resulted in a more stable lifestyle, and if defendant convinced the court that she was capable to assume her responsibilities as a parent, the court would not hesitate to return custody to her.
As the trial judge did implement recommendations regarding steps to reunite the mother and the child, we find this assignment of error meritless.

ASSIGNMENT OF ERROR NUMBER 5
Defendant asserts that the trial court reached a ruling before all of the evidence was presented. A review of the entire record shows that the trial court heard all testimony and that the same judge was present at prior hearings. The decision appealed was not rendered until all evidence was presented. We find this assignment to be totally without merit.

ASSIGNMENT OF ERROR NUMBER 6
By this assignment, defendant asserts that the trial court should have held the Gordys in contempt for violating her rights to visitation. It is a firmly established jurisprudential rule that contempt judgments are not appealable. Slaughter v. Slaughter, 499 So.2d 1123 (La.App. 3 Cir. 1986); Pasternack v. Lubritz, 280 So.2d 352 (La.App. 3 Cir.1973). This assignment of error will not be considered on appeal.

ASSIGNMENT OF ERROR NUMBER 7
Defendant contends that the trial court erred in refusing to return custody of the child to her as the child's natural mother. At a subsequent hearing to change custody brought by the natural parent previously deemed unfit, the burden of proof is on that natural parent to demonstrate that the facts which gave rise to the original denial of custody no longer exist. Guidry v. Guidry, supra.
At the hearing, Dr. Bouillion testified that the child had very serious behavior *590 problems "that were undoubtedly due to poor quality of care given by the natural mother in the early years of life." He further stated that typically, following visitations with his mother, the child evidenced increased behavior difficulty. In summary, Dr. Bouillion stated that if defendant were to regain custody of the child, it would clearly be detrimental to the child's interest.
The testimony at the hearing also revealed that defendant had been arrested in 1984 for possession of cocaine. After her arrest, defendant worked as an informant for the Sheriff's Department until about four months prior to the hearing.
Defendant also admitted picking up the child from school on a Thursday afternoon and taking him out of town without the Gordys' permission, which was in direct violation of the court visitation judgment. Defendant was arrested as a result of that incident. Defendant had also been exercising visitation with the child overnight, where a man to whom she was not married remained with her, in violation of the court's visitation judgment.
Courts are reluctant to interfere with the parental right to custody of a child except when satisfied that the parents
"will neglect them, or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they be well taken care of and properly brought up would justify the court in making some other disposition of them." State v. Miller, 232 La. 617, 94 So.2d 888, at page 889 (1957).
The preferred right of the parent must yield to the superior right of the state to deprive the parent of custody of the child in the event the physical, mental, and moral welfare of the child requires it. Paul v. Cloud, 378 So.2d 586 (La.App. 3 Cir.1979), writ den., 380 So.2d 101 (La.1980).
In this case, the trial court determined that to now place the child in the custody of the defendant would be detrimental to his welfare, and thus maintained custody of the child with the grandparents. An award to a non-parent in whose home the child has been living in a wholesome and stable environment is specifically authorized by LSA-C.C. Art. 146. Boyett v. Boyett, supra.
In child custody cases, the trial judge is vested with a vast amount of discretion in making a determination of custody. Lions v. Lions, supra; Berzins v. Betts, supra.
"On appellate review, great deference must be accorded to the decision of the trial court, not only because of that court's better capacity to evaluate witnesses, but also because of proper allocation of trial and appellate functions between the respective courts. Bagents v. Bagents, 419 So.2d 460 (La.1982); Bentley v. Bentley, 440 So.2d 1365 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 125 (La.1984). The trial judge is in a better position to evaluate the best interest of a child from his total overview of the conduct and character of the parties. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Paul v. Cloud, 378 So.2d 586 (La.App. 3rd Cir. 1979), writ denied, 380 So.2d 101 (La. 1980)." Berzin v. Betts, supra, at page 286.
Finding no abuse of discretion, we conclude that the trial judge did not err in refusing to return custody of the child to the defendant and that this assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 8
In her final assignment of error, defendant asserts that the trial judge erred in restricting her visitation privileges. The trial judge originally granted visitation to defendant on alternate weekends and holidays. In the judgment of November 19, 1985, the trial judge limited visitation to the first and third Sundays of each month.
Defendant asserts that visitation is presumed beneficial unless it is conclusively shown that visitation would endanger the child's mental, moral, or emotional health, citing Maxwell v. LeBlanc, 434 So.2d 375 (La.1983). However, Maxwell further states that the right of visitation is not *591 without its limits, since the rights of any parent are always subservient to the best interest of the child.
At the hearing, Dr. Bouillion testified that he recommended decreased visits with the natural mother, since defendant had not ceased her disruptive behavior or improved her parenting skills. He suggested limiting visitation to once a month. After hearing the evidence, the trial judge granted defendant visitation privileges of two days a month.
Because the best interest standard is to be applied in determining custody of a child, the appellate court should accept the trial judge's weighing of the testimony in the light most favorable to upholding the judgment in accord with that standard. Primm v. Primm, 409 So.2d 1288 (La.App. 2 Cir.1982). As we find that the trial judge was in a better position to evaluate the evidence, we conclude that the trial judge did not abuse his discretion in restricting defendant's visitation privileges.
For the foregoing reasons, the judgment of the trial court is affirmed at defendantappellant's costs.
AFFIRMED.
LABORDE, J., agrees with the results.