KING, Judge.
The issue presented by this appeal is whether or not the trial court erred in awarding sole custody of the minor children born of the marriage to their father.
Barbara Sonnier Leger (hereinafter plaintiff) filed a petition on October 4,1985 seeking a legal separation from Albert James Leger (hereinafter defendant) and joint custody of their children, Stephanie Leger and Brian Leger (hereinafter the minor children).
Defendant filed an answer and reconven-tional demand seeking sole custody of the minor children, or alternatively, joint custody. In response, plaintiff amended her petition seeking permanent sole custody of the minor children, or alternatively, joint custody.
After several continuances, a hearing on plaintiff’s and defendant’s rules for custody was held on August 18, 1986. The trial court rendered judgment granting sole custody of the minor children to the defendant with restricted visitation privileges being given to plaintiff. On August 20,1981, the judgment was read and signed. From this judgment, the plaintiff has timely taken this appeal. We affirm.
FACTS
Plaintiff and defendant were married on April 13, 1969. Two children were born of this marriage, namely, Stephanie Leger and Brian Leger. On June 14, 1986, the parties physically separated and have remained separate and apart since that date. Both parties resided in the city of Lafayette until their separation. After the separation, plaintiff moved to Opelousas, where she was offered a job with an insurance company, and resides in a trailer.
Plaintiff filed a petition for separation from bed and board on October 4, 1985 seeking a legal separation from defendant, alimony pendente lite, joint custody of the minor children and child support.
Defendant filed a reconventional demand requesting sole care, custody, and control of the minor children, or alternatively, joint custody.
Plaintiff then amended her petition requesting exclusive use of the family home during the pendency of the proceedings and sole custody of the children, or alternatively, joint custody.
Initially, the parties voluntarily agreed to alternate custody of the children every two weeks. This continued until about April, 1986 when they mutually agreed to alternate custody every nine weeks. This was necessary because the minor children were complaining of the instability caused by continuously having to pack up and move back and forth from Lafayette to Opelou-sas.
Problems as to custody arose after plaintiff began associating with an old high school boyfriend who had been convicted of incest. On March 10, 1986, when the various rules for custody, alimony pendente lite, child support and use of the family home were heard, the court issued an order prohibiting the plaintiff from associating with her boyfriend in the presence of the children. The trial court also issued a preliminary injunction prohibiting plaintiff’s boyfriend from being in the presence of the minor children when she had their custody. This injunction was made permanent on May 16, 1986.
After several continuances, a hearing on the parties’ rules for child custody was held on August 18, 1986. Defendant testified it would be in the children’s best interest if the court granted him sole custody of the children because of plaintiff’s persistent association with a known pedophile, despite an order from the court ordering her to refrain from such conduct, and the pedophile’s violation of a permanent injunction prohibiting him from being present when plaintiff had the children.
In defense of her actions, plaintiff testified that her boyfriend was a contractor and that due to a lack of money, she had accepted his assistance whenever work needed to be done around the family home.
After hearing all the testimony, the trial court awarded defendant sole custody of both minor children and granted plaintiff visitation rights every other weekend, un *859 der the conditions that they be exercised at her parents’ house, and without her boyfriend being present.
The plaintiff filed a timely devolutive appeal seeking to have the trial court’s custody award reversed.
LAW
The law applicable to child custody is set forth in LSA-C.C. Articles 157 and 146. LSA-C.C. Art. 157 was amended in 1982, effective January 1, 1983, to provide that all custody awards after that date shall be made in accordance with C.C. Art. 146. LSA-C.C. Art. 146 sets forth the appropriate standard to be applied by the trial court in determining the custody of a child of a dissolved marriage to be that of the best interest of the child. This standard is the sole criterion to be met in making the award. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Turner v. Turner, 455 So.2d 1374 (La.1984).
The Legislature provided a list of preferred custodial arrangements to be made according to the best interest of the children: to both parents jointly; to either parent; to the person or persons in whose home the child has been living in a wholesome and stable environment; and, finally, to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment. C.C. Art. 146(A)(1H4).
Although various custodial arrangements are available to the trial court, the Legislature established a rebuttable presumption that joint custody is in the best interest of a minor child. C.C. Art. 146(C).
While there is a presumption that joint custody is in the best interest of the minor children, this presumption may be rebutted if a parent seeking sole custody shows joint custody would not be in the children’s best interest. Article 146(A)(2) provides that “... the burden of proof that joint custody would not be in a child’s best interest shall be upon the parent requesting sole custody.” In order to determine whether a parent seeking sole custody has met his or her burden of proof, the trial court must consider eleven enumerated factors, plus “any other factor considered by the court to be relevant to a particular child custody dis.pute.” C.C. Art. 146(C)(2)(aH¿).
One of the enumerated factors which a trial court has to consider is “the mental and physical health of the parties involved.” C.C. Art. 146(C)(2)(g). This factor was of paramount importance in the present case. In his oral reasons for judgment, the trial judge, while addressing the plaintiff, stated:
“It is very rare, I can count on one hand the times that I have not given the mother the children. In this case I don’t. I award custody to Mr. Leger. The reason is not because you are unfit yourself, but your relationship to this man, after the Court having told you, madam, don’t go near this man with your children, because I have to look after those children!”
There was testimony at the custody hearing by the defendant, that he had attended his daughter’s dance review and had seen the plaintiff there with her boyfriend. This was after issuance of the court order to plaintiff and after an injunction was issued to the boyfriend prohibiting this type of conduct.
The children testified that they had seen their mother’s boyfriend on a regular basis when visiting the plaintiff. He had taken the plaintiff and the children to meet his mother and thereafter, went with them to their grandmother’s house. The children also testified that when plaintiff moved to Opelousas, her boyfriend had helped them move and had spent the weekend with them.
There was testimony that plaintiff’s boyfriend had taken the children out alone without their mother being present and that he had been invited to go bowling with them by the plaintiff. Plaintiff admitted going out to dinner with her boyfriend and taking the children along despite an order by the court prohibiting such conduct.
The Louisiana Supreme Court described the role of a trial judge in child custody cases to be: “The trial judge sits as a sort of fiduciary on behalf of the child, and *860 must pursue actively that course of conduct which will be of the greatest benefit to the child. It is the child’s emotional, physical, material and social well-being and health which are the judge’s very purpose in child custody cases.” Turner, supra, at page 1379.
The trial judge decided that the minor children’s emotional and physical well being would be at jeopardy if plaintiff had sole or joint custody. The trial court stated that, had plaintiff’s association been only for the repair of the family home, and had stopped after her move to Opelousas, he might have ruled differently. However, he found plaintiff’s persistent course of conduct, in violation of the court’s orders and a permanent injunction, was not in the best interest of the children.
In child custody matters, the trial judge is afforded wide discretion in determining which custody arrangement will serve the best interest of the children. His determination will not be disturbed absent a manifest abuse of discretion. Gordy v. Langner, 502 So.2d 583 (La.App. 3 Cir.1987), writ den., 503 So.2d 494 (La.1987); Moore v. Moore, 479 So.2d 1040 (La.App. 3 Cir.1985); Lachney v. Lachney, 446 So.2d 923 (La.App. 3 Cir.1984), writ den., 450 So.2d 964 (La.1984).
After reviewing the record, we do not find that the trial judge was manifestly in error or clearly wrong. There is sufficient evidence to show that the children’s best interest would not be served by allowing plaintiff to have either sole or joint custody of the children.
An order for the custody of a minor child of a marriage entered by a court in this state or any other state, subject to jurisdictional requirements, may be modified at any time to an order of joint custody if it is shown that the best interest of the children requires modification or termination of the earlier custody order. C.C. Art. 146(E), (F). The trial judge indicated, in his oral reasons for judgment, that he would be willing to modify the custody decree if the plaintiff demonstrated that she realized the potential danger of molestation to her children and would stop any further contacts with her boyfriend in the presence of the children.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of the appeal are taxed to plaintiff-appellant.
AFFIRMED.