KING, Judge.
This appeal presents for consideration the issue of whether the trial court was correct in finding that Linda Hulin Pilgrim is fit to have the custody of her minor child, Suzette Darlene Hulin, and in granting custody of the child to her.
The case has a complex history. In February, 1982, the Louisiana Department of Health and Human Resources (hereinafter DHHR) received complaints of physical and emotional abuse of Rodney, Rynell, and Suzette (hereinafter Suzette) Hulin, the three minor children bom of the marriage between Rodney and Linda Hulin (hereinafter appellee). Joyce Washington, a protective service worker with the DHHR, originally investigated the case and began working with the family. She concluded that appellee was primarily the abusive parent. In October, 1982, the Hulins physically separated and in November, 1982, they obtained an uncontested judgment of legal separation with the trial court awarding custody of Rodney to Mr. Hulin and custody of Suzette and Rynell to appellee. In May, 1983, Mr. Hulin filed suit against appellee for divorce on the ground of adultery with Roger Pilgrim and sought custody of all three children. This suit was also uncontested and Mr. Hulin was awarded a judgment of divorce and custody of all three children. In March, 1984, due to visitation problems, Mr. Hulin filed a writ of habeas corpus alleging appellee would *1047 not return Suzette after a visitation. Ap-pellee reconvened for custody of all three children. After a trial, physical custody of all three children was awarded to Mr. Hulin with “legal” custody to DHHR. The case was appealed to this court and we reversed the grant of legal custody of the children to DHHR but affirmed the award of custody of all three children to Mr. Hulin. See Hulin v. Hulin, 479 So.2d 969 (La.App. 3 Cir.1985). The actual custody of the children then alternated between the parents until finally, custody of the boys was placed in a foster home and custody of Suzette was placed by appellee in the home of David and Ethel Greer (hereinafter appellants). Mrs. Greer is the sister of appel-lee and Suzette’s aunt. On May 28, 1985, legal custody of Suzette was granted by an order of the juvenile court to appellants. On January 31, 1987, appellee regained legal and physical custody of Rodney and Rynell by an order of the juvenile court. Appellee then filed a rule against appellants seeking permanent custody of Suzette, alleging that she was remarried, could provide a good and stable home environment, and was fit and able to resume the permanent legal and physical custody of her daughter. After a hearing, the court rendered judgment on November 10, 1987 in favor of appellee and against appellants granting legal and physical custody of Suzette to appellee. A formal written judgment was not signed until December 14, 1987. Appellants filed a timely devolutive appeal. We affirm.
FACTS
Appellee filed a rule against appellants on September 11, 1987, seeking the permanent custody of Suzette. In her petition, appellee alleged that she had the permanent legal and physical custody of her two other minor children, Rodney and Rynell, and that appellants had legal and physical custody of Suzette. Appellee alleged that since the grant of legal and physical custody of Suzette by the juvenile court to appellants on May 28, 1985, she had married Roger Pilgrim. She also alleged that she had experienced a change in circumstances and could provide a good and stable home environment for Suzette. Appellee further alleges that she was fit and able to resume the legal and physical custody of her minor daughter.
The trial on the merits took place on November 10, 1987 and twenty witnesses testified. Thirteen of them actually testified in court and seven out of town witnesses’ testimony were introduced by deposition. Fourteen of the witnesses testified for the appellants while six witnesses testified for appellee.
At the outset of trial, the court stated that it was not necessary to prove that appellants were good people who were qualified to have the custody of Suzette, because the court was already cognizant of their background and character and of the excellent job they had done raising Suzette. The court also recognized that the sole issue in the case was whether or not appel-lee was, at that time, fit to have custody of Suzette.
The first witness was Dr. Millard Bien-venu, an expert in the field of child development. Dr. Bienvenu explained that he believed the best interest of the child should be the main consideration in custody cases. In making his determination that Suzette should remain with the appellants Dr. Bienvenu considered that they were Suzette’s “psychological parents,” because they had met all of her needs in the three years she had lived with them. He also considered the nightmares, hair pulling, delayed language development, and withdrawn demeanor that were present in Suzette when appellee first gave custody to appellants, which were no longer present three years later. Dr. Bienvenu also determined that the Greer family unit, the Greers’ parenting abilities, and Suzette’s adjustment at school were all important factors in his decision that returning Suzette to appellee would be detrimental for the child. Dr. Bienvenu also believed that Suzette’s preference for remaining in the appellants’ home should be considered. Dr. Bienvenu did admit that he would not be surprised to hear that Suzette, after a three week stay with appellee, might indicate a preference for staying with appellee *1048 because he found that . children often say what they think the parent wants to hear.”
Daisy Cooper, a Washington state social worker, and the sister of both appellee and appellant, was the next witness. She described Suzette at the time she went to appellants as “... very withdrawn, very scared, very slow in her speech, a very insecure child.” Mrs. Cooper contrasted this condition of Suzette three years later by describing her as presently very energetic, secure and happy, and well-adjusted. Mrs. Cooper also described the interaction that she witnessed between appellee and Suzette by stating that she saw no bonding, no positive mother-daughter relationship, and no hugging or attention given to Suzette by appellee. She also testified that she heard appellee say that if she got Suzette back, Suzette would never see the appellants again.
Dr. Alfred Hawthorne, a pediatrician, testified that he examined Suzette’s arm at the request of appellant, Mrs. Greer, around July 26, 1987. Suzette had just returned from a three week stay with ap-pellee. Suzette’s arm was infected and inflamed, and her back was blistering and peeling from second degree sunburns. Dr. Hawthorne diagnosed that Suzette had been the victim of medical neglect, which could possibly be considered child abuse.
Doris Bates, first cousin to appellee and appellant, testified that she had observed appellee fail to pay attention to Suzette nor try to hug or hold her. She also observed that Suzette did not care about paying attention to her mother.
Four friends and former neighbors of appellee and Roger Pilgrim in Muskogee, Oklahoma, testified for the appellants by deposition. A member of appellants’ church and the Sunday School Teacher of Suzette, who was a friend of appellants, and other witnesses also testified for appellants.
Appellant, Mrs. Greer, testified that Suzette was a very emotionally disturbed child in February, 1984. She claimed that Suzette would pull her hair whenever appellee spoke sharply to her, which was often, and that Suzette wet the bed. Appellant noticed at that time that Suzette had a red inflamed rash between her legs. She also recounted appellee telling Suzette to “shut up” crying when Suzette was obviously sick, weak and thin. Mrs. Greer stated that when Suzette first moved in with the Greers, she followed Mrs. Greer constantly and clung to her, hiding. Now, Suzette was healthy, happy, outgoing, and loving. Mrs. Greer remembered only four times that appellee visited Suzette during her stay at the Greer home and that the few times she called the child, she called collect. Mrs. Greer testified that Suzette calls her “Mother.”
Mr. Greer agreed with the whole of his wife’s testimony. He additionally noted that appellee “... didn’t appear to care, cause she didn’t appear to have any feelings toward Suzette. And that’s what touched our hearts so, the fact that Suzette was completely rejected by Linda. And she was trying to cling to somebody, so she chose Ethel.”
Appellee presented six witnesses, including herself. The first witness was Peggy Milstead, who had been married to appel-lee’s brother. She testified that she saw appellee act lovingly toward her sons and tuck them into bed. She also described the Pilgrim home in Texas as nice and clean.
Appellee testified that she and Roger Pilgrim had just married two weeks prior to trial but had lived in a common-law marriage before that time. She claimed that there had been a change in the Pilgrims’ financial status since their move to Texas and that she no longer abused drugs and alcohol. Appellee testified that she was currently in college. She also admitted that she never contributed support for Suzette while she lived with appellants and that even though she knows Suzette is happy with the Greers, she was willing to risk Suzette’s happiness to regain custody of the child.
Roger Pilgrim testified that he got along well with Rodney and Rynell and was willing to have the same relationship with Suzette. Mr. Pilgrim admitted that when he and appellee first began living together, he *1049 was still married. He also described his job and stated his weekly pay was $560.00.
Dale Milstead, the brother of appellee and appellant, Mrs. Greer, testified that he never saw appellee hit or curse her boys and that on weekends, the family would go to the movies or out to eat.
Rodney Hulin, the natural father of the three children, testified that he would like to see Suzette reunited with her brothers and appellee. He also admitted that he had tried once to give his children to a welfare agency in Texas.
The deposition testimony of Pamela Forest, a police officer in Muskogee, Oklahoma indicated that Mrs. Forest had only been to the Pilgrim home in Muskogee seven or eight times. She testified that she never saw appellee hit her boys. Mrs. Forest also stated that she had been asked by appellee to speak to Rodney, in her official capacity, about his stealing money from appellee’s purse.
The trial court made its decision immediately after the trial, and stated that:
“The law in Louisiana is clear that where there are two good homes for children, as I find as a matter of fact that there are here, that the parent is favored over a non-parent. That being the ruling of the Court, this child will be returned to her mother.”
In accordance with this decision, a formal written judgment was signed on December 14, 1987. A timely devolutive appeal was taken by appellants.
LAW
In Louisiana, appellate courts have full and complete jurisdiction to review facts, but the appellate court should not disturb the factfinding of the trial court in the absence of manifest error. Manifest error, in its simplest terms, means “clearly wrong.” Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
It is well established in Louisiana that a parent has paramount right to custody of his or her child and may be deprived of custody only if compelling reasons exist. Berzins v. Betts, 457 So.2d 282, 285 (La.App. 3 Cir.1984); Guidry v. Guidry, 441 So.2d 384 (La.App. 5 Cir.1983). In order for a non-parent, such as appellants, to be awarded custody of a child over a parent, the trial court must have found that an award to the parent would be detrimental to the child, and additionally, that such an award to a non-parent is required to serve the best interests of the child. La.C.C. Art. 146(B). This dual prong requirement is necessary for awarding custody to a non-parent when the parent asserts the paramount parental right to custody.
LSA-C.C. Article 146(B) provides:
“B. Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings.”
The appellants contend that appellee is unfit and can not be a proper mother to Suzette. Appellants emphasize the evidence of appellee’s moral unfitness, by previously living in open concubinage with the man who broke up her marriage, Roger Pilgrim; that she committed acts and used excessive force, short of actual child abuse, on her children; and that she had past substance abuse problems. In Gordy v. Langner, 502 So.2d 583 (La.App. 3 Cir.1987), writ den., 503 So.2d 494 (La.1987), this court stated:
“Moral fitness of a parent is but one factor, albeit an important one, to be considered when examining the totality of the facts, circumstances, and relationships presented by a particular case in the attempt to reach a decision in the child’s best interest. Peters v. Peters, 449 So.2d 1372 (La.App. 2 Cir.1984). The parent’s attitude towards living with a man whom she plans to marry is but one aspect of moral fitness.
‘In spite of changing attitudes and moral standards, “living together” *1050 without benefit of marriage, in a home where young children are present, remains widely regarded as immoral and as necessarily having a detrimental effect on a child’s moral upbringing. The courts of this state have consistently, in many reported cases, recognized this fact. In almost every case where the parent lived with someone to whom they were not married, and the situation continued through trial of a custody proceeding, the child was removed from custody of that parent.’ Peters v. Peters, supra, at page 1374.” Gordy v. Langner, 502 So.2d at page 587.
Appellee argues that she has changed her standard of living and has reformed by marrying Roger Pilgrim. The “reformation” rule was first adopted in Fulco v. Fulco, 254 So.2d 603 (La.1971). In Fulco, supra, after the rule for a change of custody was filed, the mother terminated her adulterous relationship and was living with her parents at the time of the trial of the rule. The Supreme Court held that, due to the mother’s reformation from any previous course of open indiscretion and probable immorality, the custody of the children could be retained by the mother.
The “reformation” rule was applied in the case of Monsour v. Monsour, 347 So.2d 203 (La.1977), where the mother had been living in open adultery for a period of four months at the time that the father filed the rule to change custody. The mother married the man with whom she had the adulterous relationship before the custody trial. The Supreme Court reinstated the trial court’s decision which found that the mother had reformed, was leading a stable life, and was suited for custody.
In Atteberry v. Atteberry, 379 So.2d 18 (La.App. 3 Cir.1979), writ granted and remanded, 381 So.2d 1231 (La.1980), it was established that Mrs. Atteberry had lived in open concubinage with a Mr. Manning for some eight months, but the pair testified that they intended to marry in the future. This court held that the best interest of the children required that custody be awarded to the father. The Supreme Court granted a writ and the case was remanded to the trial court to determine whether the best interest of the children required granting custody of the children to the mother or father. The remand of the Supreme Court did not elaborate on the reasons for the remand but, in view of the prior jurisprudence, we are left with the impression that the court felt that the intended marriage may have been consummated and wanted to give the trial judge an opportunity to consider the case in light of the “reformation” rule. See also, Hicks v. Hicks, 488 So.2d 280 (La.App. 3 Cir.1986), and cases cited therein.
The evidence does not show any recent incident where appellee mistreated Suzette or her other children, Rodney and Rynell, who are now in her custody, and does not show any recent substance abuse problems by appellee.
In the instant case, and in light of the reformation rule and the lack of evidence of any present problems of appellee, we find that the trial court was not manifestly in error or clearly wrong in failing to find that the award of custody of Suzette to appellee would be detrimental to the child and in not finding that the continued legal and physical custody of the child with appellants, as non-parents, is required to serve the best interest of the child.
For these reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to defendants-appellants.
AFFIRMED.